JOHN F. WINTERS, JR., as Adm'r of the Estate of John F. Winters, Sr., Deceased, *et al.*, Plaintiffs-Appellants, v. JACKIE L. KLINE, Indiv. and as Agent of Winegard Company, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—03—0410

Opinion filed December 2, 2003.

Thomas M. Power, of Power, Rogers & Smith, of Chicago, for appellants.

Charles W. Planek, of Fitzgerald & Cross, and Stephen R. Swofford, of Hinshaw & Culbertson, both of Chicago, for appellees.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Plaintiffs sought damages for injuries resulting in the death of John F. Winters, Sr., when he became pinned between a tollbooth and a truck driven by defendant Jackie L. Kline. The jury returned a verdict for the plaintiffs, but found plaintiffs' decedent 50% negligent in contributing to his injuries. The jury awarded $788,666.66, reduced by 50% to $394,333.33, for loss of financial support, benefits, goods, and services to the widow. The jury awarded zero dollars for the other itemized damages listed on the verdict form.

Plaintiffs filed a motion for a new trial on the issue of damages only, contending the jury's verdict was inconsistent because it ignored proven elements of damages. The trial court granted the motion. Defendants filed an emergency motion to reconsider, contending a new trial for "damages only" was not appropriate in this case, where there was evidence of a compromise verdict by the jury. The court eventually granted defendants' motion and ordered a new trial on all issues, including liability.

Plaintiffs appeal, asking us to vacate the trial court's order granting a new trial on all issues and reinstate its prior order for a new trial on damages only. We affirm the trial court.

FACTS

On April 3, 1997, defendant was driving his tractor-trailer truck for his employer, Winegard Company. Defendant had been driving

tractor-trailer trucks for 40 years, averaging about 100,000 miles per year. His wife, Sidney Kline, was riding in the passenger seat. At approximately 2:30 p.m., defendant was driving north on I-294, when he pulled into the tollway plaza at 163rd Street. He saw no pedestrians outside the toll booths. Plaintiffs' decedent was working in a tollbooth in the toll lane next to defendant's truck.

After defendant paid the toll, he slowly began to move forward out of the toll area. He did not check his mirrors prior to starting. In his experience, defendant had seen toll workers walk in front of vehicles that were stopped to pay tolls but had never seen people walking in the area of the toll booths. After defendant had pulled the truck forward a few feet, Sidney yelled, "stop" and said someone was pinned between the toll booth and the trailer. Defendant looked in the passenger side mirrors and saw decedent pinned on the side of the truck.

Sidney testified that her window was open. When they pulled into the tollbooth, she saw a dollar bill blow out of the tollbooth on their right. She heard decedent say to the person in the car, "don't worry. I'll get it." She then saw decedent exit the tollbooth through the door on the north side of the booth and approach defendant's trailer. She lost sight of decedent and wondered if there was enough room for a person to get between the truck and the tollbooth. As defendant was pulling the truck out, Sidney looked in the rearview mirror and saw that decedent was pinned, shoulder to shoulder, between the booth and the trailer.

Several toll workers testified they attempted to move decedent but could not because he was pinned so tightly. Finally, a worker kicked in the window to the tollbooth, and they released decedent's body and put him on the ground. Decedent regained consciousness and tried to get up. He had blood trickling from his nose and clear fluid from his mouth and appeared to be in pain. The paramedics took him to the hospital, and he died a week later.

Two tollway workers, Mark Slavis, a line walker, and Diana Porro, an assistant supervisor, testified to the tollway's rules and procedures. The "safety stripes" or "crosswalk stripes" run across the lanes in front of cars when they are stopped to pay a toll. The proper procedure for crossing a lane is first to make eye contact with the driver of the car, then cross inside the safety stripes. When "spillage" of money takes place in a toll lane, the procedure is to inform the supervisor, change the overhead light from green to red, secure the barrier gate, then pick up the money. The tollway employees said this rule applies to spillage in a lane, not on the island. Both workers saw decedent on the island, not in the toll lane. They did not know the location of the dollar bill decedent allegedly was retrieving. Porro also testified an ap-

propriate procedure for spillage is to fill out an "Unusual Occurrence Report" to the tollway authority; a toll worker would not be penalized for loss of money by filling out a report.

The parties presented conflicting expert opinion testimony on whether defendant breached the standard of care. Arthur Atkinson, the president of a commercial motor fleet safety consulting firm, testified for plaintiffs. He said the term "standard in the industry" means what the majority of the people in the industry is doing. The federal safety regulations require a driver to have the capability to make a visual search and understand the techniques and methods to do so. The techniques and methods are established by the industry. Before a driver moves a vehicle, he should make a visual scan from the left mirror to the right mirror, taking from 4 to 12 seconds. According to the handbook of the Professional Truck Driver Institute of America, drivers should exercise greater due diligence when in and around tollbooths because of the possibility someone may exit his or her vehicle.

After reviewing several depositions, Atkinson said he believed defendant fell below the standard of care demanded by the transportation industry when he failed to look and use his mirrors before he pulled out from the tollbooth area. Because the environment was changing, he had to look in his mirrors to make sure there was nothing different around him between the time he pulled in and before he pulled out.

Defense expert Jon Cook testified he is a safety consultant for Motor Carrier Safety Consulting Incorporated (MCSC). He said defendant had the necessary experience and skills to operate the tractor-trailer. In Cook's opinion, defendant's approach to the tollbooth was in compliance with what a reasonable trucker would do under like conditions. He paid his toll and started looking ahead to where potential danger would be. Based on his review of the Federal Motor Carrier Regulations, Cook believed defendant did not violate any of the regulations with regard to his conduct in and around the tollbooth. As he was leaving the area, he scanned the area, checking to see if there were any potential hazards ahead of him. Cook concluded defendant acted as a reasonable driver would under the same or like circumstances.

Further evidence was presented as to the extent of decedent's injuries, his pain and suffering, medical expenses, funeral expenses, and the loss of his society and income to his widow and four adult children. The jury was instructed on the presumption of substantial pecuniary loss to the widow and children. See Illinois Pattern Jury Instructions, Civil, No. 31.04 (3d ed. 1995) (hereinafter IPI Civil 3d).

On September 9, 2002, the jury entered a verdict for plaintiffs, but found decedent was 50% contributorily negligent. The defendants

proffered a special interrogatory, which was submitted to the jury with the jury instructions. The special interrogatory asked whether the jury found decedent's conduct was greater than 50% of the proximate cause of his injuries and damages. The jury answered this question in the negative. The jury awarded plaintiffs $788,666.66, itemized as follows:

As to Count I:

| | |
|---|---|
| 1. Funeral Expenses | $0 |
| 2. Medical Expenses | $0 |
| 3. Loss of financial support, benefits, goods, and services to Angeline Winters | $788,666.66 |
| 4. Loss of society to the widow, Angline Winters and to each of John F. Winters, Sr.'s children | $0 |
| TOTAL | $788,666.66 |

As to Count II:

| | |
|---|---|
| 1. Disability | $0 |
| 2. Pain and Suffering | $0 |
| TOTAL | $0. |

The damages were reduced by 50% to $394,333.33.

The court entered a judgment order on the verdict on September 11, 2002.

On October 9, 2002, plaintiffs filed a posttrial motion seeking a new trial on the issue of damages. Plaintiffs contended the jury's damage award was inconsistent because it disregarded proven elements of damages. Defendants filed a response, contending the verdict was substantial and consistent with total verdicts awarded under similar circumstances. Alternatively, defendants, in their written response, contended if the trial court ordered a new trial, the trial should be of the entire case on all issues. According to defendants, the jury's verdict suggested it may have compromised its liability evaluation based on sympathy for decedent's widow. On January 3, 2003, the court granted plaintiffs' motion, ordering a new trial on damages.

On January 16, 2003, defendants filed an emergency motion to reconsider, contending a new trial for "damages only" was not appropriate in this case, where the issues of liability and damages were intertwined, liability was contested, and there was evidence of a compromise verdict. Plaintiffs brought a motion to strike defendant's motion, contending it was not a motion for reconsideration, but a motion for new trial, which was filed too late. Plaintiffs also filed a response to defendants' motion. The court denied plaintiffs' motion to strike, granted defendants' motion to reconsider, vacated its January

3, 2003, order, and ordered a new trial on liability and damages. The court entered its written order on January 23, 2003. We granted the plaintiffs' petition for leave to appeal.

DECISION

On appeal, plaintiffs contend the trial court abused its discretion by: (1) ordering a new trial on liability as well as damages; (2) denying plaintiffs' motion to strike defendants' emergency motion to reconsider; and (3) granting the relief requested in defendants' emergency motion to reconsider.

■ A trial court's ruling on a motion for new trial will not be reversed unless there is an affirmative showing that it clearly abused its discretion. *Maple v. Gustafson*, 151 Ill. 2d 445, 455, 603 N.E.2d 508 (1992). The trial court is in a superior position to consider errors that occurred, the fairness of the trial to all parties, and whether substantial justice was accomplished. *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 932-33, 631 N.E.2d 1269 (1994), citing *Magnani v. Trogi*, 70 Ill. App. 2d 216, 220, 218 N.E.2d 21 (1966).

■ A new trial limited to the question of damages will be granted only where: (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of liability and damages are sufficiently distinct such that a trial limited to the question of damages would not be unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict nor that, in some identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 319-20, 515 N.E.2d 61 (1987); *Robbins v. Professional Construction Co.*, 72 Ill. 2d 215, 224, 380 N.E.2d 786 (1978). "These factors reflect a concern that where issues of liability and damages are closely intertwined, a new trial limited to the issue of damages would unfairly permit the plaintiff to circumvent the necessary proof of liability." *Midland*, 118 Ill. 2d at 320. See also *McCarthy v. Bach*, 204 Ill. App. 3d 691, 693, 562 N.E.2d 352 (1990).

■ The evidence supporting the verdict need not reach the level necessary to direct a verdict. *Robbins*, 72 Ill. 2d at 224. However, it must be clear from the record that there was sufficient evidence to find defendant liable and the jury did not confuse the issues of liability and damages. *Midland*, 118 Ill. 2d at 320.

Plaintiffs contend the jury's verdict on liability was supported by the evidence and the only part of the jury's verdict that was against the manifest weight of the evidence was its damages award. Plaintiffs point to the evidence at trial that despite having a semi-truck equipped

with mirrors that eliminated any blind spots, defendant failed to check his mirrors before pulling out of the lane, thereby pinning decedent. Plaintiffs contend the jury did not confuse the issues of damages and liability, because its verdict on liability was reaffirmed by its answer to the special interrogatory and the unanimous polling of the panel.

Defendants respond that the evidence of defendants' negligence— failing to look in a rearview mirror in an area where pedestrians would not reasonably be expected—was weak, while the evidence of decedent's negligence—proceeding into an area of obvious and imminent danger, in violation of tollway policies—was strong. These facts, combined with the jury's verdict ignoring several elements of damages, awarding nothing under the survival count, indicate a compromise verdict, requiring a new trial on all issues. The defendants contend the jury's 50% comparative fault finding also suggests a compromise verdict because the jury entered its finding after being instructed that if it found decedent to be any more than 50% at fault, recovery would be barred. Thus, the jury could have compromised in diminishing the share of decedent's fault below what the evidence demonstrated.

It is apparent to us that the trial court concluded this was a compromise verdict. We find the trial court did not abuse its discretion in vacating the jury's verdict and ordering a new trial on damages and liability. The jury's award of zero damages for each of the separate elements of damages, with the exception of loss of financial support, benefits, goods, and services to the widow, suggests the jury may have been motivated by sympathy for decedent's widow. Its verdict may have confused the issues of liability and damages.

■ Jury verdicts that indicate compromises were made on damages and liability cannot be allowed to stand. *Svetanoff v. Kramer*, 80 Ill. App. 3d 575, 578, 400 N.E.2d 1 (1979). While a verdict of zero damages is proper if there is evidence no damages were suffered, an award of damages that does not bear a reasonable relationship to the evidence is an indication of a compromise verdict. *Svetanoff*, 80 Ill. App. 3d at 578. We believe that is true whether the award was zero or an insignificant sum. Plaintiffs bear the burden of showing the jury's verdict was not a compromise of liability against damages. *DeFreezer v. Johnson*, 81 Ill. App. 2d 344, 348, 225 N.E.2d 46 (1967). They did not do so to the trial court's satisfaction.

■ The evidence of liability against defendant was not so clear that there is no issue on this point to be tried by a second jury. See *McCarthy*, 204 Ill. App. 3d at 693 (affirming denial of a new trial on damages where jury found both parties were 50% at fault, but found total damages to be zero); *DeFreezer*, 81 Ill. App. 2d at 348 (remanding

for a new trial on all issues where sharply contested issues of defendant's negligence and plaintiff's due care suggested a compromise verdict). There was conflicting expert opinion testimony on whether defendants were at fault. There was additional testimony suggesting decedent may have been responsible for his injuries by disregarding tollway procedures. The jury found both parties equally at fault, and the plaintiffs do not challenge that determination.

We are not persuaded by plaintiffs' contention that the jury's answer to the special interrogatory showed it did not confuse the issues of liability and damages. If the jury did compromise liability and damages, the compromise necessarily would include a negative answer to the interrogatory. To hold the decedent more than 50% responsible for his injuries would have precluded the jury from awarding any damages. 735 ILCS 5/2—1116(c) (West 2000); *Hobart v. Shin*, 185 Ill. 2d 283, 290, 705 N.E.2d 907 (1998). We hold the trial court did not abuse its discretion by modifying its order granting a new trial on damages to a new trial on all issues.

Plaintiffs contend the trial court abused its discretion in denying their motion to strike defendants' motion to reconsider. Plaintiffs say defendants' motion did not fit within the purpose of a motion to reconsider: to bring to the court's attention (1) newly discovered evidence that was not available at the time of trial; (2) changes in the law; or (3) errors in the court's previous application of existing law. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987, 518 N.E.2d 424 (1987).

■ Plaintiffs further contend the defendants' emergency motion to reconsider actually was a posttrial motion for new trial, which did not meet the criteria for such a motion and was not filed within 30 days pursuant to section 2—1202 of the Code of Civil Procedure. 735 ILCS 5/2—1202 (West 2000). A party who fails to seek a new trial in a post-trial motion within 30 days of entry of judgment waives the right to apply for a new trial. 735 ILCS 5/2—1202(c),(e) (West 2000).

Defendants respond that they did not seek relief from the judgment. Rather, after the court entered its order granting a new trial on damages, they sought relief from the interlocutory order that had vacated the judgment and granted a new trial. Their motion to reconsider properly asked the court to correct errors it had made in previously applying the law.

We agree with defendants. Defendants' motion to reconsider was not a motion for new trial, but was a motion asking the court to reconsider its prior order granting a new trial to plaintiffs on the question of damages. Even if defendants' motion could be characterized as a motion for new trial, there was no requirement for defendants

to file such a motion before the court could modify its order. The court's order for a new trial on damages was an interlocutory order vacating the prior judgment, and the court was free to modify it at any time.

■ The granting of a new trial following the filing of a posttrial motion is not a final judgment. *Stephens v. Taylor*, 207 Ill. 2d 216, 224, 797 N.E.2d 679 (2003); *Gibson v. Belvidere*, 326 Ill. App. 3d 45, 49, 759 N.E.2d 991 (2001). An order for a new trial does not settle the merits of the case, terminate the litigation between the parties, or relieve the court of its subject matter jurisdiction. *Richichi v. City of Chicago*, 49 Ill. App. 2d 320, 325, 199 N.E.2d 652 (1964). An interlocutory order may be reviewed, modified, or vacated at any time before final judgment. *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 240, 492 N.E.2d 1327 (1986).

The trial court's decision is supported by *Freeman v. Chicago Transit Authority*, 33 Ill. 2d 103, 210 N.E.2d 191 (1965), relied on by defendants. In *Freeman*, the trial court on its own motion set aside the special finding of the jury, on the ground that it was against the manifest weight of the evidence, and entered judgment on the verdicts. The supreme court held it was within the trial court's authority to do so. *Freeman*, 33 Ill. 2d at 105-106.

The court cited cases in other jurisdictions establishing the authority of a trial court to grant a new trial on its own motion. *Freeman*, 33 Ill. 2d at 106. "These decisions are based upon a recognition that the role of a trial judge is not that of a presiding officer or an umpire, and that he is responsible for the justice of the judgment that he enters. The defendant's argument would take away that responsibility and tend to reduce his role to that of an automaton." *Freeman*, 33 Ill. 2d at 106.

Plaintiffs compare this case to *Robbins v. Professional Construction Co.*, 72 Ill. 2d 215, 380 N.E.2d 786 (1978). The circumstances in this case differ from *Robbins*. In *Robbins*, the jury returned a verdict for plaintiff in the amount of $25,000. The defendants filed a posttrial motion requesting judgment notwithstanding the verdict. The plaintiff filed a motion for a new trial on damages only or, alternatively, for a new trial on all issues. The trial court granted the plaintiff's motion for a new trial on damages only. In the second trial for damages, the jury awarded plaintiffs $120,000. The trial court entered judgment on the verdict. The defendants filed a posttrial motion requesting a new trial on all issues, including liability. *Robbins*, 72 Ill. 2d at 219-20.

The supreme court held the defendants' failure to request a new trial on the question of liability following the first trial precluded them from seeking such relief after the second trial. *Robbins*, 72 Ill. 2d at 223. The defendants had argued they did not have to request a new

trial following the first trial because the trial court's order granting a new trial on damages only was equivalent to a directed verdict for plaintiff on liability. The supreme court disagreed, finding the two were not substantially equivalent. *Robbins*, 72 Ill. 2d at 224-25. A court's order granting a new trial on the issue of damages is not a directed verdict on liability, but merely an affirmance of the jury's verdict on that question. *Robbins*, 72 Ill. 2d at 224-25.

■ In this case, the trial court granted the plaintiffs' motion for a new trial on the question of damages, but a second trial never took place. The only judgment in this case was the judgment entered on the jury's verdict on September 11, 2002. After the court granted plaintiffs' motion for a new trial on damages, that judgment was vacated, and there was no final judgment. See *Gibson*, 326 Ill. App. 3d at 48-49. Defendants were not required to file a motion for new trial. The trial court modified its order for new trial by granting defendants' motion to reconsider and ordering a new trial on liability and damages. There was no abuse of discretion.

CONCLUSION

We affirm the trial court's order granting a new trial on liability and damages.

Affirmed.

CAHILL and BURKE, JJ., concur.