**CHILDREN INTERNATIONAL,**
**Appellant,**

v.

**AMMON PAINTING COMPANY,**
**Respondent.**

**No. WD 65766.**

Missouri Court of Appeals,
Western District.

Dec. 12, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2007.

Application for Transfer Denied
March 20, 2007.

Kevin E. Glynn, Michael P. Joyce, and Anne Linton Pond, for Appellant.

Stephen D. Manz and Theresa Shean Hall, Kansas City, for Respondent.

Before: HOWARD, C.J., and BRECKENRIDGE and HOLLIGER, JJ.

VICTOR C. HOWARD, Chief Judge.

The current breach of contract action involves the imprudent performance of Defendant Ammon Painting Company in painting Plaintiff Children International's printing room floor. While preparing the floor for paint, Defendant Ammon dam-aged beyond repair Plaintiff's recently purchased printing press. This court is left with two issues on appeal: did the trial court abuse its discretion in remitting the jury's verdict after each itemized damage was examined independently and is the Plaintiff entitled to prejudgment interest as a matter of law.

### Facts

Appellant Children International is a Missouri not-for-profit corporation, which mails approximately 26,000,000 pieces of material to its donors annually. It has historically been in the practice of printing some of its own materials and outsourcing, or having third-party printers prepare the remaining material. In November of 2002, Children International purchased a new printing press for $1,400,000 from a German company. At this time, the U.S. dollar and Euro were trading at close to parity. After the printer had been installed, but before it had been placed in ordinary operations, Children International entered into a contract with Ammon Painting Company in which Ammon would repaint the floor of Children International's printing room.

While preparing the floor of the printing room, Ammon failed to protect the printing press. The press was severely damaged, by small pieces of shot used to abrade the floor, and later determined to be beyond repair. As a result, Children International ordered an identical new press from the same German company to replace the press destroyed by Ammon. By April 2004, however, the Euro and dollar were no longer in parity; one Euro could be bought for $1.187. The price of an identical replacement press was negotiated for $1,600,000. Children International sold the damaged machine for $635,000.

While Children International was nego-tiating with Ammon and its representa-

tives and waiting for the new machine to arrive, it employed other companies to print its mailing materials. The total cost of this outsourcing was roughly $690,648.[1]

 Children International brought suit for damages. A breach of contract claim was submitted to the jury.[2] Children International requested that the jury return itemized damages: one damage for the damage to the machine and one for the loss of use of the machine. During closing arguments, counsel for Children International asked the jury to fully compensate the Plaintiff in the amount of $965,000 for damage to loss of property and $691,758.27 for loss of use of the property. Children International introduced no evidence that damage done by loss of use was more than $691,758.27. The parties agreed that the court would determine the propriety of prejudgment interest after the jury had returned a verdict. In April of 2005, the jury returned the following numbers on the verdict form supplied to them with the instructions:

> We, the undersigned jurors, assess the damages of Plaintiff, Children International, as follows:

> For property damage, *$765,000* (state the amount or, if none, write the word, "none").

For loss of use of property, *$892,000* (state the amount, or if none, write the word, "none").

Later in April of 2005, the court entered judgment. The court found "the verdict was contrary to the weight of the evidence and exceeds fair and reasonable compensation for Plaintiff's damages for loss of use." Pursuant to section 537.068,[3] the court sua sponte remitted $201,352 of the verdict on the loss of use line. The court also found that Plaintiff was not entitled to prejudgment interest because its claims were not liquidated. Appellant filed a motion to amend the judgment or in the alternative for a partial new trial, which the trial court denied.[4] This timely appeal follows.

## I. Remittitur

### A. Standard of Review

 Trial courts have broad discretion in awarding or declining to award remittitur. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 448 (Mo. banc 1998). We presume that the trial court acted within its discretion and will only find otherwise after a showing that the ruling in question is so arbitrary and unreasonable as to shock the conscience. *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992).

1. The parties disagreed slightly as to the cost of outsourcing. Children International placed the cost at $691,758.27. Ammon placed the costs at $690,648. It appears to be a de minimus error of accounting rather than a substantive disagreement as to methods for calculation.

2. Two other claims did not reach the jury.

3. All statutory references are to RSMo (2000) unless otherwise noted.

4. We note that the trial court did not offer a new trial. Missouri Supreme Court decisions hold that a conditional new trial is required when ordering additur, a closely related order of remittitur. For a trial court to order additur, it must have "(1) a finding that a new trial is required, (2) unless the defendant consents to increasing the judgment." *Tucci v. Moore*, 875 S.W.2d 115, 116 (Mo. banc 1994). Furthermore, several other jurisdictions require a conditional offer for a new trial to be used with remittitur. *See Ford Motor Credit Co. v. O'Neill*, 262 S.C. 413, 205 S.E.2d 170, 170–71 (1974); *Smith v. Shelton*, 569 S.W.2d 421, 424 (Tenn.1978). Nevertheless, neither party raised this issue and so we make no holding as to the necessity for remittitur to be granted as an alternative to a new trial.

## B. Analysis

This court is charged with the task of determining whether a trial court, when ordering remittitur, is to look to the verdict as a whole or look to the component, itemized portions of the verdict when determining if the jury verdict is excessive. Remittitur is authorized, in Missouri, by statute. The remittitur statute states, "[a] court may enter a remittitur order if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." Section 537.068.

■ If we were to examine the verdict as a whole, we would likely find an abuse of discretion. Ample evidence supported and little evidence disputed the jury's finding that Plaintiff suffered $1,656,758.26 in total damages. Alternatively, if we analyze each itemized damage of the jury's verdict independently, then the trial court would be well within the bounds of the remittitur statute in authorizing a reduction of the loss-of-use damage. The parties produced no evidence that the loss-of-use damage totaled $892,000.

■ Except in limited circumstances, inapplicable to the current case, plaintiffs are not required to seek itemized damages.[5] While the purpose of these inapplicable and required instances of seeking itemized damages is partially to comply with section 510.270, requiring itemized damages when punitive damages are

sought, it also is used by the court to spot jury error and misunderstanding. When the jury describes how it arrived at its total award, the court can more readily determine if the jury's findings were against the manifest weight of the evidence.[6] *See Byrd v. Burlington N. R.R.*, 939 S.W.2d 416, 418 (Mo.App. E.D.1996) (reasoning "the non-itemized verdict of the jury does not enable us to determine what award it made for future pecuniary damages and whether or not it made some adjustment for 'present value.' We find no error." (Internal citations omitted.)). The court can reverse if the evidence presented does not support the jury's particular conclusions. It thus compels the jury to arrive at a rational verdict.

Discretionary, as opposed to mandatory, itemized verdicts presumably serve a similar function. They operate not only as a tool for the plaintiff but also a means for the court to temper improper jury awards. In this case the Plaintiff, on its own accord, requested that the jury return two component, itemized damages rather than a single award in gross. Having the jury return itemized damages, rather than damages in gross, is a tool used by the plaintiff to steer the jury toward a favorable verdict. Courts in Missouri have long since noted the tactical benefit of an itemized verdict. *See Holten–Warren Lumber Co. v. Miller*, 64 Mo.App. 620, 626 (Mo. App.1896). However, it is also a means for spotting erroneous jury findings. Disregarding a jury's findings of particularized

---

5. *See* Missouri Supreme Court Rule 71.06 requiring itemized damage calculations by the jury where the plaintiff seeks punitive damages and where the plaintiff seeks damages for both injuries to person and injury to property.

6. Special verdicts, which also help the court determine the rationale of the jury, operate in a similar fashion. They produce a record of

the actual findings of fact the jury made. "Trial judges should be encouraged to seek special verdicts or general verdicts with interrogatories in order to identify and correct calculable jury errors and avoid unnecessary new trials." Irene Deaville Sann, *Remittiturs (and Additurs) in the Federal Courts: An Evaluation with Suggested Alternatives,* 38 CASE W. RES. L.Rev. 157, 221 (1987/88).

damages would render their chief benefit to the court null.

Children International argues that the jury intended to award it full compensation. According to Children International, this intent is apparent from the face of the verdict. Children International sought $1,656,758.27 and the jury found its damages to be $1,657,000. So, it claims, rounding to the nearest thousand dollars, the jury found damages exactly in the amount Plaintiff sought. Children International speculates that the jury attempted to award full damages, and only placed the $200,000, attributable to the decrease in the value of a dollar, in the loss-of-use itemized damage.

 We find this contention to be possible yet far from certain. The jury is the justice system's black box; historical information enters and legal conclusions are produced. The methods and reasons for arriving at those conclusions are unknown in ordinary review. We decline to hypothesize about the jury's reasoning. *Johnson v. Estate of Girvin*, 370 S.W.2d 163, 167 (Mo.App. S.D.1963).[7] Reviewing courts examine what the jury found, not the possible or even probable reasoning it used.[8] "[W]e may not speculate upon what a jury meant by what it said." *Id.*

While we note it is possible that the jury reached its result by errantly placing the $200,000 in the wrong category, the jury may have also reached its result through improper means. The jury could have reached its verdict, against all evidence, that the loss of use actually amounted to $200,000 more than the evidence permitted. The jury may have attempted to punish Ammon even though no punitive damages were permitted. This court cannot determine, as a matter of logic nor are we willing to assume on suspicion alone, which route the jury took to its final determination of loss-of-use damages.[9]

Furthermore, Children International argues when entering an order of remittitur, the trial court must look to the verdict as a whole because the statute compels us to do so. Section 537.068 states in pertinent part, "a court may enter a remittitur order if, after reviewing the evidence in support of *the jury's verdict*, the court finds that *the jury's verdict* is excessive...." (Emphasis added.) The statute does not discuss the possibility of itemized damages and refers without elucidation to "the jury's verdict." Children International cites *Davis v. Stewart Title Guaranty Co.*, 726 S.W.2d 839, 857 (Mo.App. W.D.1987), for the proposition that the form of the verdict, including itemization, is merely a

---

7. *See also Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir.2000) (holding, "if [a damages] award is within the bounds of reason, the fact that the jury may not have used reason to arrive at it—may instead have negotiated an unprincipled compromise in order to avoid deadlock—will not prevent it from being upheld. In other words, the court looks only at the 'bottom line,' to make sure it's reasonable, and doesn't worry about the mental process that led there." (Citations omitted.)).

8. However, it is, of course, often necessary to examine the thought process of the jury if logical necessity compels the result. For instance, if a jury finds a defendant liable for a

tort, the court may infer that the jury found each element of the tort even though the jury did not state explicitly that each element was met. In so doing, we may infer that the jury understood its instructions. *State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999). The current case is not one where logical necessity compels a result. Logical consistency as between multiple counts or charges, however, is not required. *See State v. Belford*, 615 S.W.2d 100, 101 (Mo.App. E.D.1981).

9. Even if it could, it would be more likely that the later route was taken as the plaintiff stated in its closing arguments the amounts sought for each itemized damage.

guide for the jury to help them reach the proper verdict. Under this reading of the statute, the trial court may have erred in ordering remittitur—ample evidence was produced to justify the $1,657,000 gross verdict.

While no Missouri court has directly examined the issue, several of our sister jurisdictions have explicitly embraced the notion of independent review of itemized damages. In *Winters v. Kline*, 344 Ill. App.3d 919, 280 Ill.Dec. 39, 801 N.E.2d 984 (2003), an Illinois Court of Appeal reviewed itemized damages independently to find an erroneous jury verdict. There, the damages appeared to be inconsistent when each itemized damage was independently analyzed. *Id.* at 989–90. Had the court ignored the itemized damage calculations, and instead looked to the total damages, no inconsistency would have been found. *Id.* at 989. By looking not to the verdict in gross, but to each component itemized damage, the appellate court upheld the trial court's decision. *Id.* at 992.

When reviewing trial courts for improperly granting new trials, appellate courts in Texas also follow this method. A Texas appellate court stated, "because the judgment itemized the damage elements the district court awarded, we can consider each element separately." *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 559 (Tex.App.2004) (citations omitted). *See also Dawson v. Briggs*, 107 S.W.3d 739, 749 (Tex.App.2003) (holding "[w]hen, however, the plaintiff specifically requests and apparently receives certain amounts for particular elements of damages in a default judgment ... we may review the sufficiency of the evidence to support the specific awards requested and apparently received."). The few courts that have explicitly reached the issue have generally found reviewing courts are to examine each itemized damage independently.

Moreover, Children International's reliance on *Davis v. Stewart Title Guaranty Co.* is misplaced. There, a litigant complained that the form of the verdict should not have been read to the jury with the instructions and the form of the verdict was improper. That case states:

> Instructions inform the jury of the law and what their decision must be, based on that law. That is to say: instructions are the guide to a proper verdict. A form of verdict, however, is not an instruction. A verdict is the decision rendered by the jury under the instructions of the court. ... A form of verdict is the medium to record the decision of the jury.

*Davis*, 726 S.W.2d at 857 (internal citations omitted). In the current case, the form of the verdict illuminates the jury's decision, rather than obscuring it. The decision rendered is that the Plaintiff was entitled to $765,000 for damage to property and $892,000 for loss of use of damaged property. The form of the verdict merely produces a medium for the jury to return a decision.

Children International also argues that the jury was entitled to place the $200,000 attributable to the change in the exchange rate of the dollar and Euro in the loss-of-use category, as opposed to the damage-to-property category, despite its request to the jury to place it in the damage-to-property category. They rely solely on Instruction No. 6, which allows the jury to award all damages which "will fairly and justly compensate Plaintiff for the loss of use" of the printing press until the new printing press was installed. Children International believes that the instructions standing alone are enough to substantiate a jury finding of loss of use $200,000 above the evidence.

This argument, while creative, is devoid of merit. The evidence presented as well as the instructions are to be used by the jury in returning a verdict. When the trial court orders remittitur, it looks to the sufficiency of the evidence to support the jury's findings. "A court may enter a remittitur order if, *after reviewing the evidence in support of the jury's verdict,* the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." Section 537.068 (emphasis added). The jury had no evidence to find the Plaintiff suffered $892,000 of loss-of-use damages. Moreover, no reasonable juror could have categorized the $200,000 attributable to the diminishing value of the dollar to loss of use of the press. Both Plaintiff's closing arguments and the jury instructions designate those costs as being part of damage to property.[10] The trial court was, therefore, well within its prerogative by ordering remittitur.

In the current case, the jury made a finding in respect to the loss-of-use damages which was glaringly unwarranted by the evidence. Had the jury placed the $200,000 in the damage-to-property category, ample evidence would have supported the verdict. Had there been a non-itemized verdict and the jury returned the same amount but in gross, there would have been ample evidence to support the verdict. However, the jury found that the Plaintiff suffered $200,000 more in damages for the loss of use of its press than any evidence tended to show. To hold otherwise would be to disregard the explicit decision of the jury and rely on mere speculation. The trial court did not abuse its discretion in remitting $200,000 of the loss-of-use damages.

Point I is denied.

## II. Prejudgment Interest

### A. Standard of Review

Determination of the right to prejudgment interest is reviewed de novo because it is primarily a question of statutory interpretation and its application to undisputed facts. *McKinney v. State Farm Mut. Ins.,* 123 S.W.3d 242, 245 (Mo.App. W.D.2003). *See also Uxa ex rel. Uxa v. Marconi,* 128 S.W.3d 121, 136 (Mo.App. E.D.2003).

### B. Analysis

Appellant Children International claims it is entitled to prejudgment interest on the cost of outsourcing its printing in the amount of $690,648 under section 408.020.[11] Prejudgment interest can be based only on either statute or

---

10. Instruction No. 6 stated in part: "If you find in favor of plaintiff, then you must award Plaintiff such sum as you may find from the evidence to be the difference between the fair market value of the 2003 Press before it was damaged and its fair market value after it was damaged...." Fair market value was defined as "the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so." The change in exchange rate would affect the price between a willing buyer and seller. It would not affect the cost of obtaining printing from a third source in the interim.

11. It states in pertinent part, "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made...." Section 408.020. Furthermore, "[t]he term 'account' as used in section 408.020 is not limited to its traditional meaning. The term is considered equivalent to a 'claim' or 'demand.'" *Chouteau Auto Mart, Inc. v. First Bank of Mo.,* 148 S.W.3d 17, 27 (Mo.App. W.D.2004) (internal citations omitted).

contract. *A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 396 (Mo.App. E.D. 1998). Our discussion concerns only the statutory right to prejudgment interest under section 408.020. Parties with outstanding accounts, under the applicable Missouri statute, are entitled to prejudgment interest of nine percent if the amount owed is liquidated or readily ascertainable and a demand for payment, definite as to both time and amount, has been made on the debtor party. *Nusbaum v. City of Kansas City,* 100 S.W.3d 101, 109 (Mo. banc 2003). Awards of prejudgment interest are not discretionary; if the statute applies, the court must award prejudgment interest. *Holtmeier v. Dayani,* 862 S.W.2d 391, 407 (Mo.App. E.D.1993) (relying on *California & Hawaiian Sugar v. Kansas City Terminal Warehouse Co.,* 788 F.2d 1331, 1335 (8th Cir.1986)). However, "[t]he courts may also consider equitable principles of fairness and justice when awarding prejudgment interest." *Catron v. Columbia Mut. Ins. Co.,* 723 S.W.2d 5, 7 (Mo. banc 1987). The purpose of statutory prejudgment interest is to promote settlement of lawsuits and fully compensate plaintiffs by accounting for the time-value of money. *Hopkins v. Am. Econ. Ins. Co.,* 896 S.W.2d 933, 945 (Mo.App. W.D.1995) (discussing prejudgment interest under section 408.040).

▄▄▄ In the current case, the trial court found the damages for loss of use, or outsourcing of the printing, were unliquidated and did not, therefore, award prejudgment interest to Children International. The court did not state its reasoning. Nor did it discuss the sufficiency of Children International's demand. Children International alleges the claim was liquidated and thus they were entitled to prejudgment interest.

▄▄▄ The trial court was correct in holding that the damages due to loss of use were unliquidated. Missouri courts may only order prejudgment interest under section 408.020 if the claim is either liquidated, meaning fixed and determined, or readily ascertainable by computation or recognized standards. *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 111 (Mo.App. E.D.2004). *See also Baris v. Layton,* 43 S.W.3d 390, 397 (Mo.App. E.D.2001). Liquidated damages must be fixed and determined or readily determinable or ascertainable by computation. *Jerry Bennett Masonry, Inc. v. Crossland Constr. Co.,* 171 S.W.3d 81, 90 (Mo.App. S.D.2005).

Here, the damages were not liquidated. The costs associated with paying third-party printers while the damaged machine was inoperable were readily ascertainable; however, the amount billed to the third-party printers is not the amount owed by Ammon Painting. Children International provided an opaque "net" calculation for loss of use.[12] If the amount owed by Ammon Painting was simply the amount billed, it would be a readily ascertainable figure as it became due. Children International could have simply forwarded the bills from the third parties to Ammon Painting.

However, here the damages due to outsourcing were not just the billed amount to the third party. They were the billed amount less cost saved. These costs in-

---

**12.** It is unclear how Children International arrived at their "net" calculations. They describe this calculation in their reply brief as "simply the net cost of having the printing done by a third party." It is unclear how they arrived at these numbers months in advance and calculated the "net" costs. Appellant also notes there was no dispute as to the method of calculation of the net costs. Lack of dispute is not synonymous with readily ascertainable. A lack of dispute speaks to the conduct of the particular defendant. "Readily ascertainable" is an objective standard.

cluded the cost of labor, paper, film, ink, and electricity that the Plaintiff would have paid, but did not, had they printed their own materials. Many of these costs are variable, speculative, and uncertain; evidence must be gathered to support each hypothetical purchase avoided and labor saved.[13] We find it unlikely, and in any event unsupported by the record, that these costs could have been known with reasonable accuracy on August 6, 2003— months before they were due.[14]

Moreover, an estimate of outsourcing costs of $50,000 per month is not readily ascertainable. The actual costs averaged $46,000 per month. The mere fact that Children International sent an estimate rather than actual costs is indicative of unliquidated damages. The damage had not been sustained and the cost of outsourcing the printing was highly variable (ranging from $33,912.94 to $176,709.98 net). An estimate of damages is not liquidated.

However, even if we had found the damages to be liquidated or readily ascertainable, we find that Children International made insufficient demand for payment. Demand is essential for prejudgment interest on unwritten accounts. "Although the demand need be in no certain form, it must be definite as to amount and time." *Nusbaum*, 100 S.W.3d at 109; *A.G. Edwards & Sons, Inc.*, 978 S.W.2d at 397. Under section 408.020, prejudgment interest on liquidated claims

is allowed only after the account holder demands payment. A request for an "understanding" on a balance owed is insufficient demand. *McClellan v. City of St. Louis*, 170 S.W.2d 131, 134 (Mo.App.1943). The demand for payment must leave no doubt as to when and how much payment is due.

In oral arguments, Plaintiff Children International stated that the demand was made in an email from Children International to Ammon Painting on August 6, 2003. That email stated in pertinent part:

> In addition, Children International should be compensated for additional costs incurred during the time we are awaiting delivery and complete installation of the new press. We have prepared a list of *estimated costs* related to the replacement of the current press with a new press that aggregate $1,873,540. That figure includes the following *assumptions:*
>
> . . . .
>
> Outsourcing @ $50,000 per month (net) $337,500

(Emphasis added.) This email neither provides a definite amount owed nor a specific time when payment must be tendered.[15] It would have been manifestly unreasonable to require the Defendant to pay the *estimated* $50,000. "Prejudgment interest is generally not warranted when

---

**13.** There is evidence on the record that accountants from each company exchanged information about these costs. The record, however, does not inform us what information was exchanged and if it was accepted as reasonable by defendant.

**14.** The purported demand letter was sent on August 6, 2003. Outsourcing costs run from July 2003 to October 2004.

**15.** Appellant also provided monthly statements of outsourcing costs. These also seem to lack the same concrete amount owed and time when payment is due although the record is not clear.

the debtor is unaware of the amount owed." *Nusbaum,* 100 S.W.3d at 109. Here, Ammon Painting does not owe an estimate. Ammon Painting owes actual outsourcing costs less cost saved by not printing in-house. The purported demand only constituted an estimate of future outsourcing costs for an indefinite period. There was no obligation to pay an estimate. Furthermore, the Defendant had no indication of when it was appropriate to tender payment. A definite date in the future set for payment or a demand for immediate payment is required.[16] Also, the Defendant raised the issue of failure on the part of the Plaintiff to mitigate the outsourcing damages. Defendant produced a colorable, although unsuccessful, argument tending to show much of the costs associated with outsourcing the printing were not attributable to its unworkmanlike performance—they were attributable to a failure to mitigate damages. A bona fide dispute as to the amount of damages owed will result in the damages being classified as unliquidated. *Ritter*

*Landscaping, Inc. v. Meeks,* 950 S.W.2d 495, 497 (Mo.App. E.D.1997) (discussing liquidated damages under section 408.040).[17] The demand was insufficient to compel prejudgment interest.[18]

Point II is denied.

## Conclusion

The order of the trial court is affirmed for reasons stated herein.

BRECKENRIDGE and HOLLIGER, JJ., concur.

---

**16.** *See* 47 C.J.S. *Interest & Usury* Section 103 (2005).

**17.** Appellant cites *Hawkinson Tread Tire Service Co. v. Indiana Lumbermen's Mutual Insurance Co. of Indianapolis, Indiana,* 362 Mo. 823, 245 S.W.2d 24 (1951), to dispute this point. The case is inapposite. It pertains to interpretation of insurance contracts, not interpretation of prejudgment interest under section 408.020. There is no discussion of liquidated damages or sufficient demands for obtaining prejudgment interest.

**18.** Although the issue was not briefed by the parties, the filing of the lawsuit can be sufficient demand if no demand is made prior to the filing. *Chouteau Auto Mart, Inc. v. First Bank of Mo.,* 148 S.W.3d 17, 27 (Mo.App. W.D.2004). "If a demand for payment is not made prior to filing of a lawsuit, then the filing itself constitutes a demand." *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 111 (Mo. App. E.D.2004). However, not all filings will constitute a demand. *See Transamerica Ins. Co. v. Pa. Nat'l Ins. Cos.,* 908 S.W.2d 173, 177 (Mo.App. E.D.1995) (finding filing the lawsuit was insufficient demand where plaintiff did not request a specific amount owed in pleading and defendant-debtor did not know how much was owed). The demand need not be expressly stated in the petition—requesting "such other relief as may be proper" will suffice. *Watters,* 136 S.W.3d at 111. In *Chouteau,* the pleadings sufficed as a demand. 148 S.W.3d at 27. However, there, unlike in the current case, the amount owed was readily ascertainable, and more importantly, known by the defendant. Moreover, in its petition for damages Children International peculiarly requested that the court grant relief for "its direct and ongoing losses in a sum exceeding $100,000.00, for its costs, attorney fees and such other sums as the Court deem just." It is unclear what the $100,000 refers to. It is also unclear if the request for $100,000 would put defendant on notice that it owes $690,000 for outsourcing costs.