

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | | |
|---|---|---|---|
| MIDWEST TRUST CO. AS | ) | | |
| CONSERVATOR FOR K.P., | ) | | |
| | ) | | |
| **Respondent,** | ) | | |
| | ) | | |
| v. | ) | **WD86697** | |
| | ) | **Consolidated with WD87624** | |
| UNITED PARCEL SERVICE, INC.,  | ) | **Filed: May 20, 2025** | |
| | ) | | |
| **Appellant.** | ) | | |

### APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY
### THE HONORABLE DAVID P. CHAMBERLAIN, JUDGE

### BEFORE DIVISION ONE: KAREN KING MITCHELL, PRESIDING JUDGE, LISA WHITE HARDWICK, JUDGE, AND MARK D. PFEIFFER, JUDGE

United Parcel Services, Inc., ("UPS") appeals from a judgment awarding compensatory damages on a negligence claim for *in utero* injuries to K.P.[1] in a car accident caused by a UPS driver. UPS contends the circuit court erred in admitting evidence of the driver's history of cocaine use and in awarding prejudgment interest. For reasons explained herein, we affirm the judgment.

---

[1] The judgment was awarded to Midwest Trust Company as the conservator and next friend of K.P.

## Factual and Procedural Background

On May 8, 2018, Steven Miller was driving a UPS delivery truck in Clay County when he missed a stop sign and crashed into a car driven by J.P., who was 13 weeks pregnant with K.P. An ambulance took J.P.to the hospital. K.P suffered fetal brain damage in the accident and was born seven months later with severe neurological impairments.

On March 10, 2021, K.P.'s parents, as Next Friend for K.P., filed an amended petition seeking compensatory and punitive damages against UPS on claims of vicarious liability for Miller's negligence in causing the accident, negligent entrustment of the UPS vehicle to Miller, and negligent hiring, supervision, and training of Miller.[2] UPS filed an answer admitting that Miller was acting in the course and scope of his employment as a UPS driver when he failed to stop at a stop sign and caused the accident. On April 26, 2022, Midwest Trust Company ("Midwest") was substituted as Conservator and Next Friend for K.P.

Prior to trial, UPS filed a motion *in limine* to exclude any "evidence, argument or discussion" related to Miller's drug use prior to and after the accident, Miller's participation in drug rehabilitation programs before and after the accident, and Miller's positive drug test taken months after the accident. UPS argued that Miller's history of drug use was irrelevant and highly prejudicial because there was no "credible evidence"

---

[2] The amended petition also alleged individual claims by K.P.'s parents for loss of consortium and negligence claims against Miller. The parents voluntarily dismissed their claims before trial. Midwest Trust Company moved to dismiss all claims against Miller at trial. The circuit court subsequently entered a judgment dismissing with prejudice all claims against Miller.

2

that he was under the influence at the time of the accident. The circuit court agreed to exclude any references to Miller's post-accident drug use but otherwise denied the motion *in limine*. The court granted UPS's request for a continuing objection at trial to any mention of Miller's drug use or rehabilitation prior to the accident.

At the jury trial, Miller testified that he caused the accident with J.P. when he "missed the stop sign." In 2009, Miller was convicted on a felony charge of cocaine possession, and he informed UPS about the conviction in 2010 when he was initially hired to work as a pre-loader in the warehouse. Miller acknowledged having attendance problems at UPS due to his ongoing cocaine use, which resulted in his suspension from work as a driver in 2016 and his termination in February 2018. After voluntarily completing an outpatient drug rehabilitation program in April 2018, Miller was allowed to return to work at UPS as a delivery driver on May 3, 2018. His collision with J.P. occurred five days later on May 8, 2018. Two UPS supervisors, who arrived at the scene shortly after the accident, testified that Miller was not asked submit to drug testing because they did not see signs of his impairment or intoxication.

Midwest presented testimony from several expert witnesses regarding how K.P. was injured in the car accident, the debilitating nature of his injuries, and his need for long-term treatment. An accident reconstructionist testified that Miller was driving down the middle of the road at a speed between 32 to 34 miles per hour and did not brake prior to the collision with J.P. According to an engineer specializing in biomechanics, the force of the accident caused J.P. to lurch forward against the latched seat belt, which applied the pressure of a 25 to 30-pound object to her abdomen while traveling at a speed

3

of 24 to 30 miles per hour. A diagnostic radiologist testified that the accident occurred in the early stage of J.P.'s pregnancy, when the fetal brain is at a critical point of development, and the sudden pressure impact most likely caused a malformation of K.P.'s brain in a condition known as Schizencephaly.[3]

A physician certified in medical-biochemical genetics opined that K.P.'s Schizencephaly was due to a vascular disruption event or insult to the brain and did not arise from a genetic disorder. Testifying to a reasonable degree of medical certainty, the physician concluded that K.P.'s condition was the result of a prenatal brain injury caused by the car crash. He explained that K.P. has irreversible brain malformation, loss of normal brain function, and neuro-developmental delays. A vocational rehabilitation counselor and a clinical psychologist testified that K.P. is likely to have seizures that will limit his ability to make a living, and he suffers from intellectual, speech, and physical disabilities that will require lifetime therapy. Based on data for this long-term care and low prospects for employment, a financial expert estimated the present value of K.P.'s economic damages at $49,787,705.

During the defense case, UPS accepted responsibility for Miller causing the accident while driving a company vehicle. UPS presented expert testimony on the causation of K.P.'s injuries and the assessment of damages as the primary contested issues. The defense medical experts listed genetics as one of several risk factors for Schizencephaly that could not be excluded as a possible cause of K.P.'s condition.

---

[3] Schizencephaly is a condition associated with a split or cleft in the cerebral cortex of the brain.

At the close of evidence, Midwest submitted two claims to the jury for compensatory damages: 1) UPS's vicarious liability for Miller's negligent conduct in the motor vehicle collision that caused injury to K.P., and 2) UPS's negligent entrustment of a motor vehicle that Miller was incompetent to operate due to his long-term cocaine use. Midwest also requested punitive damages for both claims, asserting that UPS knew Miller's cocaine use created a high probability of injury and thereby showed complete indifference or conscious disregard for the safety of others by allowing him to drive the UPS vehicle.

The jury returned a verdict in favor of Midwest on the vicarious liability negligence claim, awarding $65 million in compensatory damages and no punitive damages. The jury ruled in favor of UPS on the negligent entrustment claim and denied all relief. The circuit court granted Midwest's motion for pre-judgment interest in the amount of $9,895,068 and entered a final judgment against UPS for a total of $74,985,068.[4] UPS appeals.

**Analysis**

UPS raises three points on appeal. In Points I and II, UPS contends the circuit court abused its discretion in overruling the objections regarding Miller's drug use because the evidence was not legally or logically relevant to the claims for vicarious liability negligence and negligent entrustment. In Point III, UPS argues the court

---

[4] The final judgment also included post-judgment interest of 9.875% annually, accruing from the jury's verdict on March 17, 2023.

5

misapplied the law in awarding pre-judgment interest because Midwest failed to comply with the demand letter provisions of Section 408.040. [5]

***Points I and II - Objections to Evidence of Drug Use***

The admission of evidence is within the purview of the circuit court, and our review is only for abuse of discretion. *Bell v. Redjal*, 569 S.W.3d 70, 81 (Mo. App. 2019). We defer to the circuit court's evidentiary ruling unless it is "clearly against the logic of the circumstances before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* at 80-81. An abuse of discretion will not be found if reasonable minds can differ on the circuit court's course of action. *Id.* "The appellant has the burden of showing the abuse of discretion and the prejudice resulting therefrom." *Porter v. Dir. of Revenue*, 168 S.W.3d 147, 150 (Mo. App. 2005).

At trial, UPS objected to evidence of Miller's history of cocaine use as irrelevant because UPS had admitted responsibility for Miller's conduct and there was no "credible evidence" that he was under the influence of drugs at the time he caused the accident with J.P. In overruling the objection, the circuit court explained that UPS did not require Miller to submit to drug testing immediately after the accident and, thus, Midwest was entitled to present evidence of Miller's propensity for drug use as an indication that he was impaired at the time of the accident or that UPS "purposely did not look to see if he had used [drugs] that day."

---

[5] All statutory citations are to the Revised Statutes of Missouri 2016.

On appeal, UPS contends the court abused its discretion in overruling the objection because the evidence of Miller's drug use was irrelevant to the vicarious liability negligence claim and was designed to inflame the jury, resulting in an "excessive verdict." UPS also asserts the evidence was "irrelevant as to any theories of negligent hiring, training, supervision, and/or entrustment" because UPS's admission of vicarious liability barred any additional theories of imputed negligence.

We note initially that the circuit court repeatedly denied UPS's motions challenging submission of the negligent entrustment claim (and similar theories) throughout the trial court proceedings. Pursuant to the general rule in *McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995), UPS had argued that once it accepted *respondeat superior* liability, Midwest could not pursue any other claims of imputed negligence for Miller's conduct. However, *McHaffie* recognized an exception to the general rule in cases where the employer may be liable for punitive damages that would not be assessed against the employee. *Id.* at 826. Midwest asserted claims for punitive damages that fell within that exception, and therefore the circuit court allowed submission of the additional claim for negligent entrustment of the UPS vehicle and evidence that would support a punitive damages award based on Miller's drug use. See *Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 393 (Mo. App. 2013). While this appeal challenges the denial of objections to evidence of Miller's drug use, UPS has not appealed the denial of its challenges to the negligent entrustment claim and the court's decision to submit that claim to the jury. Accordingly, we will only address the relevance of the drug-related

7

evidence in determining the precise question of whether the circuit court erred in overruling UPS's objections.

To be admissible at trial, evidence must be both logically and legally relevant. *Dixson v. Missouri Dep't of Corr.*, 586 S.W.3d 816, 830 (Mo. App. 2019). Evidence is logically relevant if it tends to make the existence of any consequential fact more or less probable. *Id.* Evidence is legally relevant if its probative value outweighs any prejudicial effect. *Id.*

The evidence of Miller's long history of cocaine use was a key fact underlying the negligent entrustment claim that Midwest submitted to the jury at trial. As stated in Jury Instruction No. 11:

> Your verdict must be for plaintiff on his claim for compensatory damages against defendant UPS for negligent entrustment if you believe:
>
> First, UPS permitted Steven Miller to operate its motor vehicle, and
>
> Second, at the time UPS permitted Steven Miller to operate its motor vehicle, Miller was incompetent to do so due to long-term cocaine use, and
>
> Third, at the time UPS permitted Steven Miller to operate its motor vehicle, UPS knew or in the exercise of ordinary care should have known that Miller was incompetent to do so, and
>
> Fourth, in permitting Miller to operate its motor vehicle, defendant UPS was thereby negligent, and
>
> Fifth, Miller's operation of the UPS motor vehicle was negligent and caused the collision as submitted in Instruction No. 9
>
> Sixth, the negligence of UPS directly caused or directly contributed to cause damage to plaintiff.

8

Based on this submission, the cocaine-related evidence was a consequential fact that made it more probable that Miller was incompetent to operate the UPS vehicle. [6] The evidence was also essential to support the punitive damages claim, as the jury was asked to consider whether UPS showed complete indifference or conscious disregard for the safety of others by negligently entrusting the vehicle to Miller as a long-term cocaine user. The logical relevance is clear, and there is no indication that any prejudice from this evidence outweighed its probative value. The jury returned a defense verdict on the negligent entrustment and punitive damages claims, all of which were based solely on Miller's cocaine use. It is apparent the jury did not believe such drug use was a factor in the accident and therefore denied relief for alleged misconduct. The circuit court did not abuse its discretion in admitting the evidence as it was logically and legally relevant to the negligent entrustment and punitive damage claims, regardless of the jury's ultimate decision.

Our courts have long recognized that evidence admissible for one purpose is not necessarily inadmissible because it is improper or prejudicial for another issue. *Pierce v. Platte-Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 775 (Mo. banc 1989). Thus, we must also reject UPS's argument that the drug-related evidence should have been excluded because it was irrelevant to the vicarious liability claim on which the jury awarded $65 million in compensatory damages. There can be no showing of prejudice because the jury's consideration of this damage claim was unaffected by the evidence relating to other

---

[6] Although not addressed by either party on appeal, we note that Miller testified at trial and, thus, information regarding his prior cocaine conviction was admissible "to affect his credibility" pursuant to Section 491.050.

claims. As noted, the jury denied relief on the punitive damages claim associated with the vicarious liability claim, presumably because it did not believe that Miller was impaired at the time of the accident. The jury was able to distinguish between UPS's liability for Miller missing the stop sign and any additional liability that could have been imposed for his drug use.

We further deny UPS's argument on appeal that the jury verdict was excessive as a result of repeated references to Miller's drug use at trial. The jury has "virtually unfettered" discretion to determine damages because there is a "large range between the damage extremes of inadequacy and excessiveness." *Stewart v. Partamian,* 465 S.W.3d 51, 56 (Mo. banc 2015). A damages award should "fairly and reasonably" compensate the plaintiff based on "the nature and extent of injury, diminished earnings capacity, economic condition, plaintiff's age" and consideration of other factors such as past and future pain, suffering, and effect on lifestyle. *Id.* at 56-57. Given the severity of K.P.'s injuries arising from the accident and expert testimony estimating the present value of his economic damages at $50 million, it was not unreasonable for the jury to award a total of $65 million for the long-term care and treatment his condition requires, as well as pain and suffering during his 82-year life expectancy. UPS did not seek remittitur of the damages award and has not challenged the evidence supporting the award on appeal.[7]

---

[7] UPS also could have requested a limiting instruction with regard to the cocaine-related evidence but did not do so. *Sapp v. Morrison Bros. Co.,* 295 S.W.3d 470, 483-84 (Mo. App. 2019) ("When a trial court receives evidence admissible for one purpose but not for another, a party upon request is entitled to an instruction limiting the extent and purpose for which the jury may consider the evidence.")

Accordingly, no prejudice has been shown from the verdict in favor of Midwest and the award of compensatory damages. Points I and II are denied.

*Point III - Award of Prejudgment Interest*

UPS contends the circuit court misapplied the law in awarding prejudgment interest because Midwest failed to comply with a notice provision of Section 408.040. As relevant to this point on appeal, Section 408.040.3 provides:

> In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives, and to such party's liability insurer if known to the claimant, and the amount of the judgment or order exceeds the demand for payment or offer of settlement, then prejudgment interest shall be awarded…

UPS argues that Midwest failed to send a demand letter to Liberty Mutual, as UPS's insurer, and therefore was not entitled to recover prejudgment interest on the damages awarded for injuries to K.P. This point raises a question of law and statutory interpretation, subject to our *de novo* review. *Child. Int'l v. Ammon Painting Co.*, 215 S.W.3d 194, 202 (Mo. App. 2006).

Midwest responds that it did not send a separate demand letter to Liberty Mutual because it was directed to communicate with Liberty Mutual through the attorney the insurer had retained to defend UPS. Based on that instruction, Midwest sent a certified mail demand letter to UPS's attorney and specifically requested: "Please forward this letter and the enclosures to the insurance companies providing liability insurance coverage to United Parcel Service, Inc. for this lawsuit." On appeal, UPS does not dispute that Midwest was instructed to direct all such communications through the

11

retained attorney and that Midwest sent the demand letter to the designated attorney with a request that it be forwarded to the insurers.

The purpose of the prejudgment interest statute is to promote lawsuit settlements and fully compensate plaintiffs for the time-value of money. *Mabie v Mason,* 703 S.W.3d 667, 670-71 (Mo. App. 2024). Awards of such interest are not discretionary; if the statute applies, the court must award prejudgment interest. *Id.* The courts may also consider equitable principles of fairness and justice when awarding such relief. *Id.*

Our court recently addressed this specific issue of compliance with Section 408.040.3 in *Mabie*, where the plaintiff similarly sent a demand letter to defense counsel who had been retained by the defendant's insurer. *Id.* We recognized that "defense counsel retained by an insurance company actually represents both insurer and insured." *Id.* at 671. In so doing, defense counsel becomes an agent of the insurer, and defense counsel's receipt of a demand letter for the defendant also constitutes receipt for the insurer. *Id.* *Mabie* concluded that the plaintiff "complied with section 408.040.3" when she sent the demand letter to defense counsel as the agent for insurer. *Id.* at 672.

In light of the holding in *Mabie,* we find no error in the circuit court's award of prejudgment interest based on the demand letter Midwest sent to the counsel for both Liberty Mutual and UPS. Point III is denied.

### Conclusion

We affirm the circuit court's judgment.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

12