Mark R. ROSENBERG, Appellant,

v.

Burton H. SHOSTAK and Moline & Mehan, LLC, Respondents.

No. ED 98219.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 12, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 2013.

Application for Transfer Denied Aug. 13, 2013.

**10**

Frank K. Carlson, Union, MO, for appellant.

Joseph L. Green (Burton H. Shostak), Chesterfield, MO, Lawrence R. Smith (Moline & Mehan, LLC), Clayton, MO, for respondents.

PATRICIA L. COHEN, Judge.

*Introduction*

Dr. Mark R. Rosenberg (Plaintiff) appeals the judgment of the Circuit Court of St. Louis County granting summary judgment in favor of Burton H. Shostak and his former law firm, Moline & Mehan, LLC (the Firm) (collectively, Defendants), on Plaintiff's petition for legal malpractice. Plaintiff argues that the trial court erred in granting Defendants' motion for summary judgment because: (1) genuine issues of material fact remain in dispute; (2) the statute of limitations did not bar Plaintiff's claim; (3) neither Plaintiff's criminal conviction, the denial of his *coram nobis* petition, nor the medical licensing boards' disciplinary actions collaterally estopped Plaintiff's claim; (4) Plaintiff's inconsistent positions did not judicially estop his claim; and (5) Defendants were not entitled to estoppel due to unclean hands. We affirm.

*Factual and Procedural Background*

The record reveals the following undisputed facts: Plaintiff was licensed to practice medicine in Missouri, Kentucky, Maryland, North Carolina, and Ohio and was certified as a specialist in psychiatry by the American Board of Psychiatry and Neurology, Inc. (ABPN). Plaintiff served as officer, director, and shareholder of Neuropsychiatric and Counseling, P.S.C., a Kentucky professional services corporation (the Corporation). The Corporation discontinued operations following a raid by federal agents. Plaintiff retained Mr. Shostak and the Firm in connection with "the investigation currently being conducted relative to alleged insurance fraud in the northern Kentucky area and any criminal litigation that may result from it in the United States District Court."[1]

The United States Attorney charged Plaintiff with two misdemeanor counts of knowingly receiving and retaining stolen property of the United States. Plaintiff agreed to plead guilty pursuant to a plea agreement. At the plea hearing, Plaintiff admitted that when a physician working for the Corporation was not certified with a particular insurance company, the Corporation billed that physician's services in the name of a physician who was certified and accepted payment from the insurance company. Plaintiff acknowledged that he was aware of these improper billing practices and that the affected insurance companies included Medicare and other health insurance programs of the United States government. Plaintiff pleaded guilty to both counts. The United States District Court for the Eastern District of Kentucky sentenced Plaintiff to a term of two years' probation and ordered him to pay restitution of $209,435.78.[2]

Plaintiff notified the medical licensing boards of Missouri, Kentucky, Maryland, North Carolina, and Ohio of his conviction. Based on the conviction, the Missouri board publicly reprimanded Plaintiff, the Kentucky and North Carolina boards placed him on probation, the Ohio board suspended him, and the Maryland board revoked his medical license. Due to the boards' disciplinary actions, the ABPN revoked Plaintiff's certification as a specialist in psychiatry.

Plaintiff filed a petition for writ of error *coram nobis* in the United States District Court for the Eastern District of Kentucky. Plaintiff sought to vacate his conviction due to ineffective assistance of counsel, alleging that Defendants misadvised him about the "extreme collateral consequences" of pleading guilty. Plaintiff asserted that as a result of Defendants' inaccurate advice, he did not plead guilty knowingly, voluntarily, or intelligently. After an evidentiary hearing, the district court found that Defendants did not misadvise Plaintiff concerning the effect of his guilty plea on his medical licenses and that Defendants "conveyed only [the] belief or hope that the negotiated plea would avoid license issues as well as imprisonment." The district court also found that at the time of the guilty plea, Plaintiff was aware of potential adverse consequences. The district court determined that Defendants did not render ineffective assistance of counsel and denied Plaintiff's petition.

Plaintiff filed a legal malpractice petition alleging that he pleaded guilty "upon the advice [of] Defendant Shostak, even though [Plaintiff] was not guilty and had a good and meritorious defense, because Defendant Shostak regularly and repeatedly assured Plaintiff that if he took the federal plea there would be no negative impact [on Plaintiff's] professional licensing status." Plaintiff claimed that but for Mr. Shostak's allegedly negligent advice, he would have proceeded to trial and succeeded in defending the criminal charges. Plaintiff stated that as a result of Defendants' advice, he incurred the following damages: (1) the medical boards' disciplinary actions; (2) the ABPN's revocation of his specialist certification; (3) expenditure of attorneys'

---

1. In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff disputed this factual assertion on the ground that it "reflects only a part of what Defendants were hired to do" and that Defendants "also agreed to represent Plaintiff regarding all professional licensing issues."

2. The United States Attorney also charged the Corporation with one felony count of knowingly receiving and retaining stolen property of the United States. Plaintiff pleaded guilty to the charge on behalf of the Corporation. The district court sentenced the Corporation to unsupervised probation for one year.

fees and restitution; (4) loss of income; and (5) "emotional and medical injury and damages," including being "subject to embarrassment and humiliation by his peers, fellow workers, employees, friends and family."

The Firm filed a motion for summary judgment, and the trial court granted Mr. Shostak leave to join the motion. Defendants contended that they were entitled to judgment as a matter of law on the grounds that the following barred Plaintiff's claim: (1)the statute of limitations; (2) collateral estoppel based on Plaintiff's guilty plea and conviction, his unsuccessful petition for writ of error *coram nobis,* or the medical boards' disciplinary actions; and (3) judicial estoppel due to Plaintiff's inconsistent positions regarding Mr. Shostak's advice. The trial court granted Defendants' motion without providing a basis for its decision. Plaintiff appeals.

### Standard of Review

We review the entry of summary judgment de novo.[3] *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Id.* Thus, "[t]he propriety of summary judgment is purely an issue of law." *Id.*

"As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* "If the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the decision if it was appropriate under any theory." *English ex rel. Davis v. Hershewe,* 312 S.W.3d 402, 404 (Mo.App. S.D.2010) (quotation omitted).

When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.*

### Discussion

Plaintiff presents seven points on appeal. Because our resolution of Plaintiff's third point is dispositive of the appeal, we decline to address his remaining six points.

In his third point on appeal, Plaintiff claims that the trial court erred in granting summary judgment in Defendants' favor because they were not entitled to judgment as a matter of law on the ground that Plaintiff's criminal conviction has not been vacated. More specifically, Plaintiff argues that vacation of his conviction was not a prerequisite to maintaining his legal malpractice action against Defendants. Defendants respond that Plaintiff's criminal

---

**3.** Both parties rely on Missouri law throughout their briefs, with the single exception of Defendants' argument that the Kentucky statute of limitations applies to Plaintiff's claim.

Given the parties' apparent agreement that Missouri law governs all other issues on appeal, we apply Missouri law to the issues we address.

conviction collaterally estopped him from demonstrating his innocence, which is an indispensable element of his malpractice claim. In particular, Defendants maintain that Plaintiff's guilt, which was established by his guilty plea and the federal district court's denial of post-conviction relief, collaterally estopped Plaintiff from proving that Defendants' actions proximately caused his damages.

█ The four elements of a legal malpractice action are: "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; [and] (4) damages to the plaintiff." *Klemme v. Best,* 941 S.W.2d 493, 495 (Mo. banc 1997). A defendant moving for summary judgment may establish a right to judgment as a matter of law by demonstrating that the plaintiff "cannot and will not be able to prove one or more elements of [its] claim." *Highfill v. Hale,* 186 S.W.3d 277, 280 (Mo. banc 2006).

█ "Collateral estoppel, or issue preclusion, is used to preclude the relitigation of an issue that already has been decided in a different cause of action." *Brown v. Carnahan,* 370 S.W.3d 637, 658–59 (Mo. banc 2012). Collateral estoppel applies when: (1) the issue in the present case is identical to an issue decided in the prior adjudication; (2) the court in the prior adjudication rendered a judgment on the merits; (3) the party against whom collat-eral estoppel is asserted is the same party or in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *State ex rel. Johns v. Kays,* 181 S.W.3d 565, 566 (Mo. banc 2006).[4]

█ A party may assert collateral estoppel offensively or defensively. *Brown,* 370 S.W.3d at 659. "Defensive collateral estoppel generally involves a defendant invoking the doctrine to prevent a plaintiff from relitigating a fact decided against the plaintiff in earlier litigation that is necessary for the plaintiff to establish and carry his burden of proof." *James v. Paul,* 49 S.W.3d 678, 685 (Mo. banc 2001). Generally, courts favor defensive collateral estoppel more than offensive collateral estoppel. *Brown,* 370 S.W.3d at 659.

█ Under the so-called "exoneration rule," a legal malpractice defendant may successfully invoke collateral estoppel if the plaintiff was convicted of an offense and failed to obtain exoneration by appellate or post-conviction relief, because the adjudication of the plaintiff's guilt precludes him from proving proximate cause. *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 501–04 (Mo.App. E.D.1985); *accord Costa v. Allen,* 323 S.W.3d 383, 385 (Mo.App. W.D.2010); *Kuehne v. Hogan,* 321 S.W.3d 337, 342 (Mo.App. W.D.2010). A majority of states that have considered

---

4. Although the instant case concerns the preclusive effect of a federal criminal judgment, Plaintiff and Defendants rely on Missouri precedents in their briefs. Accordingly, we decline to decide whether federal law governs the resolution of the issue presented here. *See Gibson v. Trant,* 58 S.W.3d 103, 114 n. 4 (Tenn.2001). We note, however, that federal courts have suggested that when considering the preclusive effective of a federal criminal judgment, federal law applies. *See Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 43 n. 4 (2d Cir.1986); *see also Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). At least one federal court has determined that pursuant to federal law, collateral estoppel bars claims like Plaintiff's. *See Levine v. Kling,* 123 F.3d 580, 583 (7th Cir.1997) (citing federal cases to support proposition that "by operation of the doctrine of collateral estoppel, a valid criminal conviction acts as a bar to overturning that conviction in a civil damages suit").

this issue have adopted a form of the exoneration rule.[5] A plaintiff whose guilt is evidenced by a valid conviction is unable to establish that his or her attorney's actions proximately caused damages because "[i]n the absence of actual innocence, ... [a plaintiff's] own illegal actions would be the full legal and proximate cause of his damages." *Costa*, 323 S.W.3d at 387; *see also Wiley v. County of San Diego*, 19 Cal.4th 532, 79 Cal.Rptr.2d 672, 966 P.2d 983, 988 (1998) ("In the criminal malpractice context ..., a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence."). Accordingly, a plaintiff's innocence is an indispensable element of his or her malpractice cause of action. *O'Blennis*, 691 S.W.2d at 503.

▮▮▮▮ A legal malpractice plaintiff who pleads guilty and/or subsequently denies his or her guilt is equally subject to the exoneration rule. Where a plaintiff pleads guilty, his responses under oath at the plea hearing establish the factual basis of the guilty plea and his admission of commission of the charged acts. *Id.* Collateral estoppel bars such a plaintiff's malpractice claim because "[t]hat plea decided the same issue of fact present in [the] malpractice case; it resulted in a judgment on the merits; [a malpractice plaintiff] is a party to both cases; [and] he had a full and fair opportunity to litigate his guilt or innocence." *Id.* The result is the same even when a plaintiff asserts that he pleaded guilty not because he was guilty but for "subjective reasons," such as to avoid the

---

5. *See, e.g., Shaw v. State, Dep't of Admin., Pub. Defender Agency*, 861 P.2d 566, 572 (Alaska 1993) (malpractice defendant may raise plaintiff's actual guilt as affirmative defense); *Shaw v. State, Dep't of Admin., Pub. Defender Agency*, 816 P.2d 1358, 1360 (Alaska 1991) (post-conviction relief required); *Coscia v. McKenna & Cuneo*, 25 Cal.4th 1194, 108 Cal. Rptr.2d 471, 25 P.3d 670, 676 (2001) (post-conviction relief required); *Wiley v. County of San Diego*, 19 Cal.4th 532, 79 Cal.Rptr.2d 672, 966 P.2d 983, 991 (1998) (actual innocence is a necessary element of cause of action); *Schreiber v. Rowe*, 814 So.2d 396, 399 (Fla.2002) (plaintiff must prove innocence to establish causation element); *Steele v. Kehoe*, 747 So.2d 931, 933 (Fla.1999) (appellate or post-conviction relief required); *Gomez v. Peters*, 221 Ga.App. 57, 470 S.E.2d 692, 695 (1996); *Lamb v. Manweiler*, 129 Idaho 269, 923 P.2d 976, 979 (1996); *Kramer v. Dirksen*, 296 Ill.App.3d 819, 231 Ill.Dec. 169, 695 N.E.2d 1288, 1290–91 (1998); *Canaan v. Bartee*, 276 Kan. 116, 72 P.3d 911, 921 (2003); *Stephens v. Denison*, 150 S.W.3d 80, 83–84 (Ky.Ct.App.2004) (post-conviction relief required); *Ray v. Stone*, 952 S.W.2d 220, 224–25 (Ky.Ct.App.1997) (plaintiff must prove innocence to establish proximate cause); *Berringer v. Steele*, 133 Md.App. 442, 758 A.2d 574, 597 (2000); *Glenn v. Aiken*, 409 Mass. 699, 569 N.E.2d 783, 787–88 (1991) (proof of innocence required); *Labovitz v. Feinberg*, 47 Mass.App.Ct. 306, 713 N.E.2d 379, 384 (1999) (undisturbed guilty plea bars legal malpractice action even if claimant did not pursue an ineffective assistance claim); *Noske v. Friedberg*, 670 N.W.2d 740, 744 (Minn.2003); *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368, 374–75 (2000); *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491, 727 A.2d 996, 998–99 (1999); *Carmel v. Lunney*, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126, 1128 (1987); *Morgano v. Smith*, 110 Nev. 1025, 879 P.2d 735, 737–38 (1994); *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556, 566 (1993); *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108, 113, 115 (1993); *Gibson v. Trant*, 58 S.W.3d 103, 105 (Tenn.2001); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497–98 (Tex.1995); *Adkins v. Dixon*, 253 Va. 275, 482 S.E.2d 797, 801–02 (1997); *Ang v. Martin*, 154 Wash.2d 477, 114 P.3d 637, 642 (2005); *Humphries v. Detch*, 227 W.Va. 627, 712 S.E.2d 795, 801 (2011); *Hicks v. Nunnery*, 253 Wis.2d 721, 643 N.W.2d 809, 823 (2002). Only a few courts have held to the contrary. *See, e.g., Rantz v. Kaufman*, 109 P.3d 132, 136 (Colo.2005) (rejecting exoneration rule); *Gebhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900, 908 (1994); *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058, 1061 (1989). *See generally* 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 27.13, at 1172, 1183 (2012 ed.).

mental anguish of a trial. *See id.* at 500, 503–04. Where a plaintiff subsequently denies guilt, "the denial is entirely without legal import as long as the judgment of conviction stands" because the conviction "stands as presumptive proof to the entire world for all purposes that the person convicted was in fact actually guilty." *Costa,* 323 S.W.3d at 385.

Public policy considerations clearly support the exoneration rule. "[I]t would undermine the effective administration of the judicial system to allow the relitigation of the issue of guilt or innocence in a subsequent action." *Id.* at 386 (quotation omitted). In addition, to permit such litigation would allow the malpractice claimant "to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." *O'Blennis,* 691 S.W.2d at 504 (quoting *In re Estate of Laspy,* 409 S.W.2d 725, 730 (Mo.App. 1966)). Allowing such lawsuits "would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." *O'Blennis,* 691 S.W.2d at 504. Finally, "[i]f the criminal courts are the mechanisms our society relies upon to provide relief to wrongly-convicted defendants, it should not be that civil courts may ignore the results of the post-conviction process once it has concluded." *Gibson v. Trant,* 58 S.W.3d 103, 115 (Tenn.2001).

▆▆ Here, Defendants invoke the exoneration rule. More specifically, Defendants assert that collateral estoppel establishes their right to judgment as a matter of law on the basis that Plaintiff's undisturbed criminal conviction prevents him from proving that Defendants' advice proximately caused Plaintiff's damages.

All four elements of collateral estoppel are present. First, Plaintiff based his unsuccessful *coram nobis* petition on the ground that his guilty plea was involuntary and therefore invalid because Defendants misinformed him about the collateral consequences of pleading guilty. The validity of Plaintiff's guilty plea and the related issue of Plaintiff's guilt are also at issue in the malpractice action because if Plaintiff was guilty, then his own illegal acts proximately caused his damages irrespective of Defendants' advice. *See id.* at 113–14 (applying collateral estoppel where the malpractice suit was "based on the exact same allegations made in the post-conviction proceedings," that the plea was involuntary due to counsel's misinformation). Second, because the federal district court analyzed and rejected Plaintiff's claim that his guilty plea should be vacated due to ineffective assistance of counsel, there was a judgment on the merits in the *coram nobis* proceeding. Third, Plaintiff was a party to both the *coram nobis* action and the instant case. Finally, Plaintiff had a full and fair opportunity to litigate the validity of his guilty plea in the *coram nobis* proceeding because that was the basis of his writ petition. Moreover, Plaintiff had every incentive to prove his allegation in the *coram nobis* proceeding because if he had succeeded, the federal district court would have vacated the conviction upon which the medical boards relied in imposing discipline. *See id.* at 114; *Brewer v. Hagemann,* 771 A.2d 1030, 1033 (Me. 2001) ("When the malpractice plaintiff has every incentive in his post-conviction petition to fully litigate the issue of whether his attorney's malfeasance caused him any prejudice, collateral estoppel is appropriate."). Accordingly, under the exoneration rule, Plaintiff's guilty plea and subsequent failure to obtain post-conviction relief[6]

---

**6.** "In the federal courts, *coram nobis* is a

post-conviction remedy available in the dis-

conclusively established his guilt, which collaterally estops him from proving that Defendants' advice proximately caused his damages.

The fact that Plaintiff pleaded guilty makes invocation of collateral estoppel particularly appropriate because Plaintiff admitted under oath to committing criminal acts but now seeks damages on the basis that he never committed those acts. Civil procedure scholar Geoffrey C. Hazard, Jr. described this situation as "particularly galling" because "a criminal convicted on his own guilty plea seeks as plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession." Geoffrey C. Hazard, Jr., *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems*, 66 Cornell L.Rev. 564, 578 (1981). We agree with Professor Hazard that "[t]he effrontery or, as some might say it, *chutzpah*, is too much to take." *Id.*

The Court of Appeals of Michigan recently affirmed a grant of summary judgment on the ground of collateral estoppel in a case with nearly identical facts. In *Orzame v. Taglia*, a physician's attorneys informed him that if he pleaded guilty to a charge, "it was possible his medical license would be revoked, but [the attorneys] assured him that it would not be revoked because he would plead guilty only to a misdemeanor." No. 253260, 2005 WL 1875657, at *1 (Mich.Ct.App. Aug. 9, 2005).[7] The physician pleaded no contest to the misdemeanor offense. *Id.* As a result of the plea, the state medical licensing board revoked the physician's license as mandated by state statute. *Id.* The physician brought a legal malpractice claim against his attorneys, "claiming that they had failed to adequately advise him that his plea would result in the mandatory revocation of [his] medical license." *Id.* The court relied on collateral estoppel in holding that "the finding in [the physician's] criminal trial that he did not receive ineffective assistance of counsel barred his subsequent civil claim of legal malpractice." *Id.*

Plaintiff asserts that the case that Defendants primarily rely on, *State ex rel. O'Blennis v. Adolf*, is distinguishable because Plaintiff premised his malpractice claim not on trial error but rather on negligent advice to plead guilty despite his actual innocence and, therefore, *O'Blennis* does not mandate application of collateral estoppel here. We disagree. In *O'Blennis*, the plaintiff filed a legal malpractice action after succeeding on his motion for post-conviction relief. 691 S.W.2d 498, 499 (Mo.App. E.D.1985). The plaintiff alleged that his counsel was negligent for failing to interview and call witnesses at trial to establish certain defenses. *Id.* at 501. The State subsequently charged the plaintiff again, and the plaintiff pleaded guilty "only to avoid the mental anguish of a second jury trial on these charges and to eliminate the possibility of returning to prison." *Id.* at 499–500. The plaintiff did not seek post-conviction relief after his guilty plea. *Id.* The court held that because of the plaintiff's guilty plea and conviction, collateral estoppel barred the malpractice claim.

trict court to challenge a criminal conviction....'' Brendan W. Randall, *United States v. Cooper: The Writ of Error Coram Nobis and the Morgan Footnote Paradox*, 74 Minn. L.Rev. 1063, 1063 (1990). For purposes of applying the exoneration rule, we find no reason to distinguish between federal and state post-conviction remedies. *See Gibson v. Trant*, 58 S.W.3d 103, 106 n. 1 (Tenn.2001).

7. Michigan courts consider unpublished opinions, which are not binding, for instructive and persuasive value. *Paris Meadows, LLC v. City of Kentwood*, 287 Mich.App. 136, 783 N.W.2d 133, 139 n. 3 (2010).

*Id.* at 503–04. In the instant case, the federal district court rejected Plaintiff's post-conviction claim that his guilty plea was involuntary due to Defendants' allegedly negligent advice and, as a result, Plaintiff's conviction was never set aside. Thus, as in *O'Blennis,* Plaintiff was validly convicted based on his statements under oath at the plea hearing, which established the factual basis of Plaintiff's guilty plea and his admission of commission of the charged acts. *See id.* at 503.

Plaintiff also argues that his conviction does not prevent him from maintaining a malpractice action against Defendants, relying on *Jepson v. Stubbs,* 555 S.W.2d 307 (Mo. banc 1977). There, the plaintiff pleaded guilty to a federal charge based on his refusal to submit to induction into military service after his attorney advised him that he had no defense. 555 S.W.2d at 309. The plaintiff subsequently hired a new lawyer, learned that a defect existed in his order to report for induction, and successfully petitioned the trial court for vacation of the conviction on that ground. *Id.* After the trial court set aside the conviction, the plaintiff filed a negligence action against his first attorney. *Id.* at 308–09. In analyzing when the plaintiff's cause of action accrued for statute of limitations purposes, the *Jepson* Court stated that if the plaintiff had failed to obtain vacation of his conviction, "the existence of the judgment of conviction and the findings therein would not collaterally estop plaintiff from bringing an action against defendant." *Id.* at 313–14.

*Jepson* does not assist Plaintiff. As an initial matter, *Jepson* solely concerned whether the plaintiff's action was barred by the applicable statute of limitations. *Id.* at 310, 314. The specific question the Supreme Court answered was the date

upon which the plaintiff's damages were "sustained and ... capable of ascertainment." *Id.* at 311. The Supreme Court did not consider the implication of a guilty plea on a plaintiff's ability to establish proximate cause. As the *O'Blennis* court noted, *Jepson* "[did] not present a situation where the defendant's plea admitted the facts necessary for his conviction." *O'Blennis,* 691 S.W.2d at 503 n. 2. Instead, "the facts admitted by the plea were legally insufficient to support conviction, because a failure of legal notice precluded as a matter of law defendant's guilt on the facts admitted." *Id.* Here, as in *O'Blennis,* Plaintiff's claim of innocence "is based solely on his contention that he did not commit the acts he admitted he committed when he pled guilty." *Id.* Moreover, subsequent to *Jepson,* Missouri courts have directly addressed whether a defendant with a valid conviction may bring a malpractice lawsuit, and those courts have held that the doctrine of collateral estoppel bars such a claim. *See id.* at 503; *see also Costa v. Allen,* 323 S.W.3d 383, 386–87 (Mo.App. W.D.2010); *Kuehne v. Hogan,* 321 S.W.3d 337, 341–42 (Mo.App. W.D. 2010).[8]

In any event, even if *Jepson* is considered a viable precedent, Plaintiff's obstacles to proving proximate cause extend beyond that posed by Defendants' invocation of collateral estoppel. Plaintiff alleged in his petition that Defendants were negligent by "repeatedly assur[ing] Plaintiff that if he took the federal plea there would be no negative impact [on Plaintiff's] professional licensing status." Plaintiff claimed that but for Defendants' advice, he would have proceeded to trial and succeeded in defending the criminal charges. Implicit in Plaintiff's argument is that if he had been successful at trial,

---

8. Even with respect to the issue actually decided in *Jepson,* at least one court has noted that "Missouri courts have moved away from,

if not altogether abandoned, *Jepson." Settle v. Fluker,* 978 F.2d 1063, 1064 (8th Cir.1992).

the medical licensing boards would have taken no adverse disciplinary action and the ABPN would not have revoked his certification as a specialist in psychiatry. Thus, Plaintiff maintains that but for Defendants' advice, he would not have suffered the following damages: (1) the medical boards' disciplinary actions; (2) the ABPN's revocation of his certification; (3) expenditure of attorneys' fees and restitution; (4) loss of income; and (5) "emotional and medical injury and damages," including being "subject to embarrassment and humiliation by his peers, fellow workers, employees, friends and family."

■■■■ "Proximate cause requires something in addition to a 'but for' causation test to exclude causes upon which it would be unreasonable to base liability ... because they are too far removed from the ultimate injury or damage." *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 239 (Mo. banc 2001) (quotation omitted). "A defendant's conduct is the proximate cause of a plaintiff's injury when the injury is the natural and probable consequence of the conduct." *Collins v. Mo. Bar Plan.* 157 S.W.3d 726, 732 (Mo.App. W.D.2005). "This is generally a 'look back' test but, to the extent it requires that the injury be 'natural and probable,' it probably includes a sprinkling of foreseeability." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. banc 1993). "Proximate cause cannot be based on pure speculation and conjecture." *Alcorn*, 50 S.W.3d at 239 (quotation omitted).

Here, Plaintiff's damages of license discipline, loss of specialist certification, loss of income, and emotional injury resulted from the actions of independent decisionmakers with discretion. In Missouri, the State Board of Registration for the Healing Arts has the discretion to take one of several actions, including warning, proba-

tion, suspension, and license revocation, upon finding that a medical licensee pleaded guilty to an offense involving fraud or dishonesty. Mo.Rev.Stat. §§ 334.100.2(2), 334.100.4.[9] By contrast, the board must revoke the license of a person convicted of a felony. Mo.Rev.Stat. § 334.103. Similarly, the other states' medical boards had various options for disciplining Plaintiff in light of his conviction. *See* Ky.Rev.Stat. Ann. § 311.595 (West 2012); N.C. Gen. Stat. Ann. § 90–14(a) (West 2012); Ohio Rev.Code Ann. § 4731.22(B) (West 2012); *but see* Md. Code Ann., Health Occupations § 14–404(b) (West 2012) (mandatory revocation of license for conviction of crime "involving moral turpitude"). The boards' actions in this case illustrate their discretion because each administered different disciplinary measures to Plaintiff based on the same criminal conviction: (1) Missouri—public reprimand; (2) Kentucky and North Carolina—probation; (3) Ohio—suspension; and (4) Maryland—revocation.

■■■■ In particular with respect to Missouri, even if Plaintiff had proceeded to trial and been acquitted, Missouri's board may have nonetheless instituted disciplinary proceedings against him. A physician's acquittal in a criminal case does not preclude disciplinary action for the same act because the board is "free to pursue its own proceedings independently." *Younge v. State Bd. of Registration for Healing Arts.* 451 S.W.2d 346, 350 (Mo.1969). The board may discipline a licensee for "[k]nowingly making, or causing to be made, or aiding, or abetting in the making of, a false statement in any ... document executed in connection with the practice of the person's profession." Mo.Rev.Stat. § 334.100.2(14). In addition, the board may discipline a licensee for "[k]nowingly making or causing to be made a false statement or misrepresentation of a mate-

---

9. All statutory references are to RSMo 2000    as supplemented unless otherwise indicated.

rial fact, with intent to defraud, ... for payment from Title XVIII or Title XIX of the federal Medicare program." Mo.Rev. Stat. § 334.100.2(18). Thus, if the board determined that Plaintiff made or caused to be made false statements in the Corporation's billing documents, the board would have been free to institute disciplinary proceedings even in the event of Plaintiff's acquittal.[10]

Given the boards' discretion, each board could have responded in a number of ways to Plaintiff's conviction. We would have to resort to speculation and conjecture to conclude that the disciplinary measures the boards chose to implement in this particular case were the natural and probable consequences of Defendants' allegedly negligent advice. Defendants' advice is simply too far removed from Plaintiff's damages to constitute their proximate cause.[11] Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.

---

10. The Kentucky, Maryland, North Carolina, and Ohio boards may discipline a licensee for the sole reason that another state's licensing authority took disciplinary action against the licensee. *See* Ky.Rev.Stat. Ann. § 311.595(17) (West 2012); Md. Code Ann., Health Occupations § 14–404(a)(21), (24) (West 2012); N.C. Gen.Stat. Ann. § 90–14(a)(13) (West 2012); Ohio Rev.Code Ann. § 4731.22(B)(22) (West 2012).

11. Even if we assume that Defendants' advice was a cause of Plaintiff's damages, we note that Plaintiff's guilty plea may have constituted a superseding cause that severed the causal chain between Defendants' advice and

Plaintiff's damages. *See, e.g., Carmel v. Lunney*, 119 A.D.2d 50, 505 N.Y.S.2d 735, 737 (1986), *aff'd*, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987); *cf. Hogan v. Peters*, 181 Ga.App. 670, 353 S.E.2d 601, 602 (1987) (affirming dismissal where plaintiff did not aver that his status as a convicted felon resulted from counsel's negligence rather than his voluntary guilty plea); *Schlumm v. Terrence J. O'Hagan, P.C.*, 173 Mich.App. 345, 433 N.W.2d 839, 846–47 (1988) (the plaintiff's guilty plea, not his attorney's alleged failure to properly advise him concerning the consequences of a guilty plea, proximately caused the plaintiff's injuries).