Philip M. Hess, Judge
Introduction
Cristian Joel Juan and Anthony Joseph Adewunmi ("Plaintiffs") were real estate agents facing disciplinary proceedings brought by the Missouri Real Estate Commission ("MREC"). Plaintiffs hired attorney Gary Growe ("Defendant") to represent them and based upon Growe's advice entered into a settlement agreement with the MREC. Thereafter, the United States brought criminal charges against Plaintiffs. Plaintiffs retained other counsel to represent them in the criminal proceedings and through a plea agreement pled guilty to one of seven counts charged in exchange for the dismissal of the other six counts. Plaintiffs did not appeal or file any post-conviction motions while their sentences were in effect. After serving their sentences, however, Plaintiffs sued Defendant for legal malpractice, alleging Defendant's advice to enter into a settlement agreement with the MREC, which contained facts the United States allegedly used to indict them, led to their criminal charges. Defendant moved for leave to add his law firm, Growe, Eisen & Karlen, LLC (collectively "Counterclaimants") as a counter-plaintiff. The court granted leave and Counterclaimants filed a claim for breach of contract against Adewunmi for the money he failed to pay for his representation. The trial court granted summary judgment for Defendant on the malpractice claim and for Counterclaimants on the breach of contract claim. Adewunmi raises five points on appeal, four related to his malpractice claim, and one related to Counterclaimants' breach of contract claim. Juan, acting pro se, raises three points, which go to his malpractice claim. We affirm.
Factual and Procedural Background
Plaintiffs worked together on several real estate transactions from 2003 to 2005. In these transactions, Plaintiffs prepared applications for financing on behalf of the buyers which contained false, material statements about the buyer's ability to repay. In 2005, the United States began investigating Plaintiffs' real estate practice.
*589 In 2008, the MREC instituted disciplinary proceedings against Plaintiffs and Plaintiffs hired Defendant to represent them. On January 11, 2010, on the advice of Defendant, Plaintiffs entered into a settlement agreement with the MREC, agreeing to have their real estate licenses revoked in exchange for the case being dismissed.
The settlement agreement contained a joint stipulation of facts and conclusions of law referencing seven counts related to seven separate real estate transactions occurring in St. Louis from August 2003 to August 2005. The stipulation stated Plaintiffs practiced real estate as part of the "Adewunmi Team," and for each count, stated the "Adewunmi Team" knowingly assisted the buyer and lender in the preparation of a loan application that included false information.
On June 3, 2010, the United States filed a seven count indictment against Plaintiffs. Count I charged Plaintiffs with conspiracy to commit mail and wire fraud, counts II through VI charged Plaintiffs with mail fraud, and count VII charged Plaintiffs with knowingly making a false statement for the purpose of obtaining a loan to be accepted and guaranteed by the United States Department of Housing and Urban Development ("HUD"). The indictment alleged Plaintiffs worked on several real estate transactions between September 1, 2003, and September 1, 2005, where Plaintiffs prepared applications for financing on behalf of the buyers which contained false, material statements about the buyer's ability to repay. Specifically, the indictment referenced five transactions in St. Louis, only one of which was listed in the MREC disciplinary proceeding. The conspiracy charge (count I) referenced all five transactions, the mail fraud charges (counts II through VI) applied to each property individually, and the knowingly making a false statement to HUD charge (count VII) only applied to the one property in common with the criminal and MREC charges.
In January 2011, Plaintiffs signed plea agreements in which they agreed to plead guilty to knowingly making a false statement to HUD (count VII) in exchange for the dismissal of counts I through VI. On January 11, 2011, the district court accepted Plaintiffs' pleas upon determining that they were entered knowingly and voluntarily and supported by an independent factual basis. At the plea hearing, Plaintiffs acknowledged that they were under oath and could be prosecuted for making a false statement or perjury. Plaintiffs told the court that, other than the plea agreement, no promises or assurances had been made to them to cause them to plead guilty, no one had tried to force or coerce them into pleading guilty, and they were pleading guilty on their own free will. Plaintiffs agreed with the prosecutor's recitation of the facts he argued would be proven if they went to trial and admitted to committing the acts.
On April 7, 2011, Adewunmi was sentenced to three years' probation and ordered to pay a $100 special assessment and restitution of $127,000. On May 20, 2011, Juan was sentenced to one year and one day' imprisonment and to one year of supervised release. Juan was also ordered to pay a $100 special assessment and restitution of $127,000. Plaintiffs were ordered jointly and severally liable for the criminal monetary penalties imposed. Plaintiffs did not directly appeal their convictions or move for post-conviction relief while serving their sentences.
On November 13, 2014, Juan filed his petition for legal malpractice against Defendant. On January 5, 2015, Adewunmi filed his petition for legal malpractice against Defendant. The court consolidated the cases for discovery and motion rulings.
*590 Plaintiffs alleged they retained Defendant to represent them in the action brought against them by the MREC; that Defendant advised them to enter into a settlement agreement and stipulated facts requiring them to admit they assisted a buyer and lender in the preparation of loan documents that contained false information to ensure that the buyer would secure a home loan; that Defendant advised them that the stipulation could not be used against them in any other legal action; that based upon that advice, Plaintiffs entered into a settlement agreement with the MREC; that thereafter they were charged in federal court with fraud and other violations of federal criminal law; that the federal criminal charges were based on the stipulation they signed and the stipulation was admissible as evidence against them in the criminal proceedings; and that their criminal attorneys advised them to enter a plea agreement dismissing six of seven counts but requiring them to plead guilty to one count of knowingly making a false statement to HUD because the stipulation was admissible evidence against them.
Counterclaimants filed a claim against Adewunmi alleging breach of contract for Adewunmi's failure to pay them the amounts due for the legal representation provided. On May 8, 2015, Defendant filed motions for summary judgment against Plaintiffs.
On September 16, 2015, Juan filed a verified petition for writ of error coram nobis in federal district court.[1] Juan alleged his guilty plea was not knowing and voluntary because his plea counsel concealed a conflict of interest that arose during plea negotiations, misrepresented the government's plea offer to him, and coerced him into pleading guilty. He also alleged the court failed to adequately inform him of the risks associated with dual representation during the hearing on the propriety of joint representation.
On February 26, 2016, the federal district court dismissed Juan's petition with prejudice. The court found Juan could have discovered and raised his claims in a direct appeal or in a post-conviction motion before completing his supervised release, and that the plea transcript demonstrated that Juan entered his guilty plea knowingly and voluntarily. Based on Juan's testimony at the plea hearing and because Juan failed to demonstrate his actual innocence, the court concluded he could not show a fundamental error was committed such that circumstances existed compelling action to achieve justice.
Defendant filed amended motions for summary judgment against Plaintiff. On April 21, 2016, the trial court granted summary judgment for Defendant. Plaintiffs appealed. We dismissed those appeals without prejudice because there was no final, appealable judgment due to Counterclaimants' remaining breach of contract claim against Adewunmi.
On March 31, 2017, Counterclaimants motioned for summary judgment on their claim against Adewunmi. On May 31, 2017, the trial court entered summary judgment in favor of Counterclaimants. This appeal follows.
Standard of Review
The standard of review on appeal regarding summary judgment is essentially *591 de novo. Foster v. St. Louis County , 239 S.W.3d 599, 601 (Mo. banc 2007). Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Id. We review the record in the light most favorable to the party against whom judgment is sought. State ex rel. Mo. Highway & Transp. Comm'n v. Dierker , 961 S.W.2d 58, 60 (Mo. banc 1998). Facts set forth by affidavit or otherwise to support the motion are taken as true unless contradicted by the non-movant's response to the summary judgment motion. Id. The non-movant receives the benefit of all reasonable inferences from the record. Id. A defendant may establish a right to judgment by showing facts that negate any one element of the plaintiff's claim. Id.
Discussion
Adewunmi alleges the trial court erred in: 1) holding he was collaterally estopped from bringing a malpractice claim against Defendant; 2) concluding he was judicially estopped from bringing a malpractice claim against Defendant; 3) ruling for Defendant on summary judgment because genuine issues of material fact exist; 4) finding a factual basis of guilt was established precluding his malpractice claim because he had not yet been indicted when the malpractice occurred, which predated and caused the indictment; and 5) awarding prejudgment interest beginning in 2010 because an ascertainable demand was not made until Counterclaimants moved for summary judgment. Juan, pro se, raises sufficiently similar arguments made in Adewunmi's first three points as applied to him. Because we find Plaintiffs are collaterally estopped from bringing their malpractice claims against Defendant, we need not address the other points raised by Plaintiffs and the only remaining point we must address is Adewunmi's point five regarding prejudgment interest.
A. Collateral Estoppel
Collateral estoppel is used to prevent the relitigation of an issue already decided in another case. Rosenberg v. Shostak , 405 S.W.3d 8, 13 (Mo. App. E.D. 2013). There are four elements to collateral estoppel: (1) the issue in the present case is identical to an issue decided in the prior adjudication; (2) the court in the prior adjudication rendered a judgment on the merits; (3) the party against whom collateral estoppel is asserted is the same party or in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. Id.
A party may assert collateral estoppel offensively or defensively. Id. Defensive collateral estoppel generally involves invoking the doctrine to prevent a plaintiff from relitigating a fact decided against the plaintiff in earlier litigation necessary for the plaintiff to establish and carry his burden of proof. Id. Courts favor defensive collateral estoppel over offensive collateral estoppel. Id.
The elements of a legal malpractice action are: 1) an attorney-client relationship; 2) defendant acted negligently or in breach of contract; 3) defendant's acts were the proximate cause of the plaintiff's damages; and 4) but for defendant's conduct the plaintiff would have succeeded in prosecution of their underlying claim. Nail v. Husch Blackwell Sanders, LLP , 436 S.W.3d 556, 561 (Mo. banc 2014).
Proof of causation entails proof of causation in fact, or "but for" causation, as well as proximate causation. Id. at 562. In legal malpractice cases, causation in fact requires proof that, "but for" the attorney's *592 negligence, the result would have been different. Id. This is often called proving a "case within a case" or a "trial within a trial." Id. The plaintiff must also prove proximate causation, or that the injury was a reasonable and probable consequence of the defendant's negligence. Id. Proximate cause cannot be based on pure speculation and conjecture. Rosenberg , 405 S.W.3d at 18.
"In legal malpractice cases, causation in fact and proximate causation are often both subsumed within the 'case within a case.' " Nail , 436 S.W.3d at 562. "By proving that the result of the underlying proceeding would have been different 'but for' the attorney's negligence, the plaintiff also proves that the damages-the difference between what the result would have been and what it was-were the reasonable and probable consequences of the defendant's negligence." Id.
In Goodman v. Wampler , 407 S.W.3d 96 (Mo. App. S.D. 2013), the Southern District of this Court reviewed a long line of Missouri cases establishing, as a matter of law, that a criminal defendant cannot prove an attorney's alleged legal malpractice was the proximate cause of the defendant's damages sustained from being incarcerated absent an allegation of actual innocence. Id. at 99-102 (citing State ex rel. O'Blennis v. Adolf , 691 S.W.2d 498 (Mo. App. E.D. 1985) ; Johnson v. Raban , 702 S.W.2d 134 (Mo. App. E.D. 1985) ; Johnson v. Schmidt , 719 S.W.2d 825 (Mo. App. W.D. 1986) ; Ahern v. Turner , 758 S.W.2d 108 (Mo. App. E.D. 1988) ; Kuehne v. Hogan , 321 S.W.3d 337 (Mo. App. W.D. 2010) ; Costa v. Allen , 323 S.W.3d 383 (Mo. App. W.D. 2010) ; Rosenberg v. Shostak , 405 S.W.3d 8 (Mo. App. E.D. 2013) ). The Goodman court also concluded that a criminal defendant's malpractice claim is barred by collateral estoppel if the criminal convictions have not been set aside. Goodman , 407 S.W.3d at 102 (citing, e.g., Raban , 702 S.W.2d at 138 ).
While none of the cases cited by the Goodman court address whether a plaintiff can maintain a legal malpractice action against his civil attorney for damages allegedly resulting in criminal prosecution, three cases cited by the Goodman court are instructive.
In Kuehne , the defendant was convicted of rape and sodomy, and his convictions were affirmed on direct appeal. The defendant motioned for post-conviction relief claiming his trial counsel was ineffective for failing to call four trial witnesses. The defendant was appointed counsel and granted an evidentiary hearing, but appointed counsel called none of the four witnesses to testify. The motion court denied the defendant's post-conviction motion, finding the defendant's allegations of the witnesses' testimony was speculative and insufficient to prove his allegations of ineffective assistance.[2] The denial was affirmed on appeal. The defendant then filed a legal malpractice claim against his post-conviction counsel for failing to call the four witnesses to testify at his evidentiary hearing. The trial court dismissed the defendant's claim.
On appeal, the defendant argued the trial court erred in dismissing his petition because it contained sufficient allegations to establish each element of legal malpractice. The Kuehne court noted that while there were no Missouri cases addressing whether a plaintiff may maintain a malpractice cause of action against his post-conviction attorney, several Missouri cases addressed the elements a plaintiff must *593 prove in a malpractice action against his trial counsel. 321 S.W.3d at 341. The Kuehne court then cited to Adolf which "found that where the plaintiff had been convicted of a crime and thereafter sued his trial counsel for malpractice, factual innocence of the criminal charge was an indispensable element of his cause of action." 321 S.W.3d at 341. The Kuehne court concluded that "[s]uch cases also require the plaintiff to 'allege and establish that the actions or omissions by [the trial attorney] prevented [the plaintiff's] acquittal.' " Id. (quoting Schmidt , 719 S.W.2d at 826 ).
The Kuehne court pointed out that "[w]hile Missouri cases rejecting malpractice claims against a criminal defendant's trial counsel have been decided, in part, based on the principles of collateral estoppel, those cases also emphasize public policy concerns associated with such claims." 321 S.W.3d at 341. Those public policy concerns included allowing a convicted criminal to take advantage of his or her own wrong, engendering disrespect for the courts, and generally discrediting the administration of justice. Id. The Kuehne court found "that the public policy concerns underlying the actual innocence requirement in the context of a malpractice suit against a criminal trial attorney apply equally to cases involving a criminal defendant's post-conviction counsel." Id. at 342. The Kuehne court concluded that the defendant's "innocence of the criminal charges for which he was convicted [was] essential to satisfy the causation element of his claim." Id. The Kuehne court found that although the defendant asserted in his petition he was an innocent man, his allegation was merely a bare conclusion without factual support. Id. The Kuehne court stated that "[t]he fact of his guilt was previously determined when he was convicted of the criminal charges, and [the defendant] is therefore barred from asserting a collateral civil claim where actual innocence is an essential element." Id.
Similarly in Costa , decided the same day as Kuehne , the defendant brought a malpractice action against the public defender who represented him in his post-conviction proceeding. The Costa court found the public policy doctrine that the law does not allow a collateral attack of a valid criminal conviction easily disposed of the defendant's claim. 323 S.W.3d at 385. The Costa court explained that "[a]s long as a conviction is not set aside by an appeal or a post-conviction procedure, it remains a final judgment, and it stands as presumptive proof to the entire world for all purposes that the person convicted was in fact actually guilty." Id. "While the defendant may deny guilt, the denial is entirely without legal import as long as the judgment of conviction stands." Id. "The judgment conclusively binds the defendant and precludes his assertion of a collateral claim as to which his actual innocence is an essential element." Id. (citing Adolf , 691 S.W.2d at 502-04 ). The Costa court noted that "[a]lthough this case involve[d] alleged misfeasance in connection with a post-conviction proceeding rather than a claim as to the criminal trial itself, the same principles would apply here, if not more so," because "applying the public policy doctrine ... makes even more sense in this context than it does in the case in which the alleged tortious conduct was that of the trial defense counsel, because here 'but-for causation' as to the conviction of an innocent person is another step removed." 323 S.W.3d at 387. The Costa court concluded: "Also, of course, in the absence of actual innocence, which is not pleaded, Costa's own illegal actions would be the full legal and proximate cause of his damages. Anything else would 'shock the public conscience.' " Id. (quoting Adolf , 691 S.W.2d at 504 ).
*594 Lastly, in Rosenberg , the defendant, a physician, retained an attorney for an investigation related to alleged insurance fraud and any criminal litigation that may result from it. The United States charged the defendant with two counts of knowingly receiving and retaining stolen property of the United States. The defendant pled guilty to both counts pursuant to a plea agreement and was sentenced to two years' probation and ordered to pay restitution of $209,435.78.
The defendant was licensed to practice medicine in several states. Based on the convictions, the respective state medical licensing boards disciplined the defendant in varying degrees, from public reprimand to revoking the defendant's medical license. The defendant filed a writ of error coram nobis in federal court district court, seeking to vacate his conviction due to the alleged ineffective assistance of his trial counsel for misadvising him about the extreme collateral consequences of pleading guilty. The district court found no ineffective assistance of counsel and denied the defendant's petition.
The defendant then filed a legal malpractice action against his attorney and law firm claiming he pled guilty upon the advice of his attorney even though he was not guilty because his attorney repeatedly assured him that if he took the plea there would be no negative impact on his professional licensing status. The defendant claimed but for his attorney's negligent advice, he would have proceeded to trial and successfully defended the criminal charges. The trial court granted summary judgment for the defendant's trial attorney and law firm. On appeal, the defendant argued the trial court erred in granting summary judgment because the defendant's criminal conviction had not been vacated. The Rosenberg court disagreed.
The Rosenberg court set forth that under the exoneration rule, a legal malpractice defendant may invoke collateral estoppel if the plaintiff was convicted of an offense and failed to obtain exoneration by appellate or post-conviction relief because the plaintiff's guilt precludes him from proving proximate cause. 405 S.W.3d at 13 (citing Adolf , 691 S.W.2d at 501-04 ). The court explained that a plaintiff whose guilt is evidenced by a valid conviction cannot establish his or her attorney's actions proximately caused damages because in the absence of actual innocence, a plaintiff's own illegal actions would be the full legal and proximate cause of his damages. Rosenberg , 405 S.W.3d at 14 (citing Costa, 323 S.W.3d at 387 ). The court clarified that the exoneration rule applied equally to a legal malpractice plaintiff who pleads guilty and/or subsequently denies his or her guilt, reasoning that when a plaintiff pleads guilty, his responses under oath at the plea hearing establish the factual basis of the guilty plea and his admission of commission of the charged acts. Rosenberg , 405 S.W.3d at 14. The court concluded that the plaintiff is collaterally estopped from bringing a legal malpractice claim because: (1) the plea decided the same issue of fact present in the malpractice case; (2) it resulted in a judgment on the merits; (3) the plaintiff is a party to both cases; and (4) the plaintiff had a full and fair opportunity to litigate his guilt or innocence. Id. The court noted this is true even when a plaintiff asserts he pled guilty not because he was guilty but for subjective reasons because the denial of guilt is entirely without legal import if the judgment of conviction stands; the conviction stands as presumptive proof to the entire world for all purposes that the person convicted was actually guilty. Id.
The court noted these public policy considerations also clearly supported the exoneration rule: (1) relitigating the plaintiff's *595 guilt or innocence in a later action would undermine the effective administration of the judicial system; (2) permitting such litigation would allow the plaintiff to take advantage of his own wrong; (3) allowing such lawsuits would shock the public conscience, engender disrespect for courts, and generally discredit the administration of justice; and (4) the civil courts should not ignore the results of the post-conviction process once it has concluded. Id.
The court found that under the exoneration rule, the defendant's guilty plea and later failure to obtain post-conviction relief collaterally estopped the defendant from proving his attorney's advice proximately caused his damages. Id. at 15-16. Specifically, the court found all four elements of collateral estoppel were present: (1) the validity of plaintiff's guilty plea was at issue in in his coram nobis petition and in his malpractice action; (2) there was a judgment on the merits in the coram nobis proceeding; (3) plaintiff was the same party in the coram nobis proceeding and his malpractice action; and (4) plaintiff had a full and fair opportunity to litigate the validity of his guilty plea in the coram nobis proceeding. The court noted that "[t]he fact that [p]laintiff pleaded guilty makes invocation of collateral estoppel particularly appropriate because [p]laintiff admitted under oath to committing criminal acts but now seeks damages on the basis that he never committed those acts." Id. at 16.
Here, Plaintiffs claim that Defendant's allegedly negligent advice to enter into a settlement agreement with the MREC resulted in their criminal prosecutions and the damages resulting therefrom. Plaintiffs contend that but for Defendant's advice to enter into the settlement agreement containing the stipulations with the MREC, Plaintiffs would have succeeded in their criminal cases because they never would have been brought in the first place. Plaintiffs' claims fail because the proximate cause of Plaintiffs' damages are Plaintiffs' criminal actions-not Defendant's advice. See id. at 15 ("The validity of [p]laintiff's guilty plea and the related issue of [p]laintiff's guilt are also at issue in the malpractice action because if [p]laintiff was guilty, then his own illegal acts proximately caused his damages irrespective of [d]efendant's advice."); Costa , 323 S.W.3d at 387. While Plaintiffs now contend they are actually innocent, Plaintiffs' malpractice claims are barred by collateral estoppel because their criminal convictions have not been set aside. Rosenberg , 405 S.W.3d at 16 ("The fact that Plaintiff pleaded guilty makes invocation of collateral estoppel particularly appropriate because Plaintiff admitted under oath to committing the criminal acts but now seeks damages on the basis that he never committed those acts."); Goodman , 407 S.W.3d at 102. Plaintiffs' claims of innocence are bare conclusions without factual support and have no legal import. Kuehne , 321 S.W.3d at 342 ; Costa , 323 S.W.3d at 385 ; Rosenberg , 405 S.W.3d at 14. Plaintiffs' convictions stand as presumptive proof to the entire world that Plaintiffs were guilty. Costa , 323 S.W.3d at 385 ; Rosenberg , 405 S.W.3d at 14. When Plaintiffs pled guilty, their responses under oath at the plea hearing established the factual basis of their guilty pleas and their admission of commission of the charged acts. Rosenberg , 405 S.W.3d at 14. Plaintiffs are collaterally estopped from relitigating their guilt because that has already been decided by a judgment on the merits in their criminal case and Plaintiffs had a full and fair opportunity to litigate the issue in that proceeding, but they pled guilty and did not appeal their convictions. Id. at 13.
*596 This is especially true for Juan, who filed a petition for writ of error coram nobis in federal district court while this lawsuit was pending. Interestingly, in that case, Juan did not make the argument he does here. Rather, Juan argued his guilty plea was not knowing and voluntary based upon the conduct of his plea counsel and the district court. The district court dismissed Juan's petition with prejudice and specifically found Juan's plea was knowing and voluntary. This is similar to the defendant in Rosenberg, who filed a writ of error coram nobis that was denied. When the defendant subsequently filed a claim of malpractice against his plea counsel, the court found that the adjudication of the coram nobis petition collaterally estopped the defendant from pursuing his malpractice claim. 405 S.W.3d at 16. The adjudication of Juan's coram nobis petition also collaterally estops his claim here.
Further, allowing Plaintiffs to maintain their legal malpractice claims against Defendant would allow Plaintiffs to take advantage of their own criminal conduct, engender disrespect for the courts, and discredit the administration of justice. Kuehne , 321 S.W.3d at 341 ; Rosenberg , 405 S.W.3d at 14. Like in Costa , the application of the public policy doctrine to Plaintiffs' claims here are even stronger than in a traditional legal malpractice claim against a plaintiff's criminal trial attorney because Plaintiffs' but-for causation is another step removed. 323 S.W.3d at 387. Plaintiffs want to step backward and blame their civil attorney for allegedly advising them to enter into a settlement agreement stipulating to facts that were not true, but this should not be permitted for several reasons.
First, only one of the seven properties referenced in the settlement agreement was included in the indictment charging Plaintiffs with seven counts. The majority of the crimes Plaintiffs were charged with were unrelated to the settlement agreement Plaintiffs claim resulted in their criminal charges.
Second, Plaintiffs admit they had been criminally investigated for acts related to their real estate practice since 2005. That they were not indicted until June 2010, five months after the settlement agreement was entered into with the MREC, does not establish that they would not have been indicted but for the settlement agreement. Again, only one of the seven properties referenced in the settlement agreement was included in the indictment charging seven counts related to five properties. It is entirely speculative to suggest that the charges never would have been brought but for the settlement agreement. We would have to resort to speculation and conjecture as to what charges the United States would have brought against Plaintiffs. See Rosenberg , 405 S.W.3d at 19 ("We would have to resort to speculation and conjecture to conclude that the disciplinary measures the boards chose to implement in this particular case were the natural and probable consequences of Defendant's allegedly negligent advice. Defendant's advice is simply too far removed from Plaintiff's damages to constitute their proximate cause.").
Plus, Plaintiffs did not have to plead guilty once the charges were brought. Plaintiffs could have pled not guilty and proceeded to trial on the charges brought by the United States. It is entirely speculative to suggest that Plaintiffs were doomed by the settlement agreement from their MREC proceeding in their criminal proceedings, even if it would have been admissible against them. Rather, Plaintiffs want to keep the benefits afforded from their settlement agreement in their MREC proceeding and from their plea agreement in their criminal proceedings, and then *597 gain financial benefits by seeking damages for malpractice, claiming that they never committed the acts they admitted to committing to gain the benefits in the first place.
Finally, on the issue of Plaintiffs' damages. Juan alleged that because of his criminal charges and conviction, he was ordered to pay criminal monetary penalties, faced a separate civil judgment of $10,000, was forced to file bankruptcy, and suffered severe personal and monetary damages and emotional distress. Adewunmi alleged that because of Defendant's malpractice, he was ordered to pay criminal monetary penalties and suffered severe emotional and financial distress, including the loss of business relationships, revenue, the inability to refinance various loans, the loss of his license as a certified public accountant, litigation costs, and debarment by HUD. Plaintiffs' claims of damages are entirely based on speculation and conjecture and are simply too far removed to be the proximate cause of Defendant's allegedly negligent advice. See Rosenberg , 405 S.W.3d at 18 (finding plaintiff's damages of license discipline, loss of specialist certification, loss of income, and emotional injury resulting from the actions of independent decision-makers with discretion was simply too far removed from plaintiff's damages to constitute their proximate cause). Adewunmi's point I and Juan's point II are denied. Because our resolution is dispositive of all points raised except Adewunmi's point V, we decline to address to the remaining points.
B. Prejudgment Interest
In point V, Adewunmi contends the trial court erred in awarding prejudgment interest from 2010 under section 408.020[3] because an ascertainable demand was not made until Counterclaimants filed an affidavit with their motion for summary judgment stating the amount owed. Counterclaimants dispute that a demand was not made before the affidavit was filed. Point V is denied.
Determination of the right to prejudgment interest is de novo. Children Int'l v. Ammon Painting Co. , 215 S.W.3d 194, 202 (Mo. App. W.D. 2007). Prejudgment interest can be based on either statute or contract. Id. at 202-03. Since there was no contractual agreement on prejudgment interest, the only issue here is whether the statutory award of prejudgment interest was proper.
Under section 408.020, parties are entitled to prejudgment interest of nine percent if the amount owed is liquidated or readily ascertainable and a demand for payment, definite on both time and amount, has been made on the debtor party. Id. at 203. The purpose of prejudgment interest is to promote settlement of lawsuits and fully compensate a party by accounting for the time-value of money. Id.
Under section 408.020, prejudgment interest on liquidated damages claims is allowed only after demand of payment is made. Watters v. Travel Guard Int'l , 136 S.W.3d 100, 111 (Mo. App. E.D. 2004). A demand for payment may be made any time after the debt becomes due. Nangle v. Brockman , 972 S.W.2d 545, 550 (Mo. App. E.D. 1998). If a demand for payment was not made before a lawsuit was filed, then the filing itself constitutes a demand. Id. Although the demand need not be in a certain form, it must be definite on amount and time. Id. Generally, prejudgment interest is not warranted when the debtor is unaware of the amount owed. Id. The mere fact that a party denies liability or defends against a claim does *598 not preclude recovery of prejudgment interest. Jablonski v. Barton Mut. Ins. Co. , 291 S.W.3d 345, 350 (Mo. App. W.D. 2009).
Here, we find Adewunmi's argument is without merit for several reasons. First, Adewunmi did not argue to the trial court that no demand for payment had been made. Thus, Adewunmi failed to preserve this issue for review. Nat'l Heritage Life Ins. Co. v. Frame , 41 S.W.3d 544, 550 (Mo. App. E.D. 2001). This is a sufficient reason alone to deny Adewunmi's point V.
Second, Adewunmi acknowledges that Counterclaimants' petition filed in February 2015 requesting such other and further relief as the court deems just and proper has been held by this Court to be sufficient to satisfy the demand requirement. See Rois v. H.C. Sharp Co. , 203 S.W.3d 761, 767 (Mo. App. E.D. 2006) (stating that a petition need not make a specific request for prejudgment interest and that a petition which prays that the court grant such other relief as may be proper is sufficient). Thus, Adewunmi acknowledges Counterclaimants were at least entitled to prejudgment interest from the time they filed their petition in February 2015. See Nangle , 972 S.W.2d at 550 ("If a demand for payment was not made prior to filing a lawsuit, then the filing itself constitutes a demand.").
Third, we find Counterclaimants made several demands before filing their claim. This was admitted by Adewunmi. In Counterclaimants' statement of uncontroverted material facts to support their motion for summary judgment, Counterclaimants alleged Adewunmi was billed $97,843.00 plus $6,016.68 for reimbursement of out-of-pocket expenses, Adewunmi had paid $53,926.29, and Adewunmi had a balance due of $49,933.39 since August 4, 2010, the date of his last payment. This was supported by Defendant's affidavit and copies of the invoices sent to Adewunmi which are definite on amount and time.
In his response, Adewunmi admitted he had been billed $97,843.00 plus $6,016.68 for reimbursement of out-of-pocket expenses, he had paid $53,926.29, and he made his last payment August 4, 2010. Thus, Counterclaimants made their demands by sending Adewunmi invoices for payments and Adewunmi admitted as much. See Doe Run Resources Corp. v. Certain Underwriters at Lloyd's London , 400 S.W.3d 463, 477 (Mo. App. E.D. 2013) (finding multiple demands made where plaintiff sent invoices and spreadsheets detailing the invoices and costs); Bledsoe Plumbing & Heating, Inc. v. Brown , 66 S.W.3d 169, 173 (Mo. App. W.D. 2002) (ordering prejudgment interest to be recalculated to the date that the bill was sent); cf. Nangle , 972 S.W.2d at 550 (finding no demand made by attorney to client where he neither requested payment nor sent a bill to client). While Adewunmi denied he owed $49,933.39 based on his argument that the legal services were below the standard set forth by the Missouri Bar, this does not preclude recovery of prejudgment interest. Jablonski , 291 S.W.3d at 350. Further, Adewunmi admits in his brief he has no evidence to dispute he owed $49,933.39.
Lastly, without citing to any evidence to support his argument, Adewunmi argues no demand was made because the parties had several communications regarding fees and Defendant at one point offered to take a flat fee in lieu of an hourly rate. Even if this were true, it does not help Adewunmi. The purpose of prejudgment interest is to promote settlement of lawsuits and to fully compensate a party by accounting for the time-value of money. Children Int'l , 215 S.W.3d at 203. That Counterclaimants may have negotiated with Adewunmi trying to settle this claim should not have a negative *599 impact on Counterclaimants' ability to collect the full amount owed when the requirements for prejudgment interest have been met, and Counterclaimants had to file their petition to pursue their damages because an agreement could not be reached. Point V is denied.
Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

The federal district court explained that a writ of coram nobis affords the same general relief as a writ of habeas corpus and is only available when the applicant is not in custody. See United States v. Noske , 235 F.3d 405, 406 (8th Cir. 2000) (per curiam); United States v. Little , 608 F.2d 296, 299 n.5 (8th Cir. 1979) ; Azzone v. United States , 341 F.2d 417, 419 (8th Cir. 1965) (per curiam).

A post-conviction claim of ineffective assistance of counsel is a civil proceeding. Edwards v. State , 200 S.W.3d 500, 515 (Mo. banc 2006).

All references to statutes are to RSMo (2016), unless otherwise indicated.